NEWTON WALTON v. CAROLINA TELEPHONE AND TELEGRAPH COMPANY

No. 8823SC456

(Filed 18 April 1989)

1. Courts § 19; Master and Servant § 16.1; Pensions § 1 — employer's refusal to bridge prior service — collective bargaining agreement — fraud claim not pre-empted by federal law

A state law claim against a former employer for fraud in refusing to bridge plaintiff's prior service with an affiliated company for all purposes after plaintiff had worked for defendant for five years because a collective bargaining agreement prohibited bridging prior service at another company was not pre-empted under Sec. 301 of the Labor Management Relations Act since plaintiff's claim was not founded directly upon the terms of the collective bargaining agreement and required no interpretation of the agreement.

2. Limitation of Actions § 8.1 — employer's refusal to bridge prior service — notice of fraud — jury question

Plaintiff's 1985 claim against his former employer for fraud in refusing to bridge plaintiff's prior service with an affiliated company for all purposes, including layoffs, after five years of employment with defendant because a collective bargaining agreement prohibited bridging prior service of another company was not barred by the three-year statute of limitations as a matter of law; rather, the evidence presented a jury question as to whether plaintiff was put on notice of the alleged fraud in 1981 by a disposition of his grievance, which focused on whether plaintiff's credited service entitled him to preferential selection of work schedules and vacation times, or whether plaintiff reasonably continued to rely upon defendant's representations until 1983 when, after five years of employment with defendant, he was laid off.

**3. Master and Servant § 10— fraud action against employer — employment at will doctrine inapplicable**

Plaintiff's claim against his former employer for fraud in refusing to bridge his prior service with an affiliated company for all purposes after five years of employment with defendant was not barred by the employment at will doctrine.

APPEAL by defendant from *Julius A. Rousseau, Jr., Judge.* Order entered 22 July 1987 in Superior Court, WILKES County. Heard in the Court of Appeals 25 January 1989.

*Richard L. Doughton; and Hall & Brooks, by John E. Hall, for plaintiff-appellee.*

*Robert Carl Voigt, Senior Attorney, Carolina Telephone and Telegraph, for defendant-appellant.*

BECTON, Judge.

The plaintiff, Newton Walton ("Walton"), brought this action against his former employer, defendant Carolina Telephone and Telegraph ("CTT"), alleging fraud and misrepresentation in connection with his transfer to CTT from North Electric Company ("NEC"). The gist of Walton's complaint is that CTT induced his transfer by promising him that, upon completion of five years' work at CTT, Walton's period of employment (important for purposes of determining seniority and entitlement to other benefits) would be measured from the time he began at NEC (1970), rather than the time he started at CTT (1978). CTT later refused to "bridge" Walton's prior NEC service for all purposes, explaining that it was prohibited from doing so by an existing collective-bargaining agreement between CTT and its unionized employees. As a result, in 1983, after five and a half years of employment at CTT, Walton had earned insufficient CTT seniority to withstand a layoff.

The central questions before us on appeal are (1) whether Walton's state-law tort claim is pre-empted by federal law, and (2) whether Walton's claim is barred by the statute of limitations. We hold that Walton's claim is neither federally pre-empted nor time-barred.

I

A.  Facts

Late in 1977, Walton, a telephone installer at NEC, began negotiating with CTT regarding a transfer from NEC's plant in

Galion, Ohio, to CTT's plant in Siler City, North Carolina. Critical to these negotiations, according to Walton, was the promise he obtained from CTT that his seniority and service benefits, acquired by virtue of his continuous employment with NEC since 1970, would carry over to his employment with CTT upon completion of five years of work at CTT. Walton alleged that he agreed to transfer based on these representations.

At the time Walton's negotiations began, NEC and CTT were subsidiaries of United Telecommunications, Inc. ("United Telecommunications"). However, on 1 January 1978, within days of Walton's planned transfer and while he was still employed at NEC, International Telephone and Telegraph ("ITT") fractured that relationship by purchasing NEC from United Telecommunications. Walton subsequently sought and received assurances from CTT that this transaction did not affect their agreement, and on 21 January 1978, Walton left NEC. Five days later, on 26 January 1978, he started work at CTT as a telephone installer and repairman.

Although Walton did not belong to a union, he was a member of a work group at CTT represented by Local Union 1912 of the International Brotherhood of Electrical Workers ("IBEW"). As the exclusive bargaining agent for Walton's work group, the IBEW entered into a series of contracts with CTT in 1977, 1978, 1980, and 1983. CTT alleged that these contracts set the terms and conditions of employment for all employees in Walton's work group and that the contracts implicitly prohibited bridging prior service at any company outside CTT.

Walton continued to work for CTT until July 1983, when he and other employees were laid off on the basis of seniority. Walton's seniority was measured from the time he started with CTT in January 1978; both parties agree that had his NEC seniority been bridged at CTT, Walton would not have been laid off. CTT paid Walton a $9,829.60 termination allowance, which included credit for his prior NEC service.

B. Procedural History

On 23 September 1983, Walton brought suit against United Telecommunications and CTT for breach of contract. On 2 February 1985, that complaint was voluntarily dismissed without prejudice. Walton filed a second complaint on 8 August 1985 against CTT, alleging fraud and misrepresentation. CTT answered and moved

for summary judgment. CTT's motion for summary judgment was granted 23 April 1987. However, on 22 July 1987, after reviewing this court's decision in *Welsh v. Northern Telecom, Inc.* (filed 21 April 1987), the trial judge vacated the summary judgment order, and denied CTT's motion for summary judgment. CTT appealed, and this court granted certiorari.

CTT contends on appeal that it was entitled to summary judgment for three reasons: (1) Walton's state-law claim was federally pre-empted under Section 301 of the Labor Management Relations Act; (2) Walton's claim for fraud and misrepresentation was barred by the statute of limitations; and (3) Walton's employment with CTT was governed by the employment at will doctrine. We address these contentions in order.

## II

[1] CTT contends that Walton's fraud claim was federally pre-empted because resolution of the claim would require analysis of the collective-bargaining agreement since that agreement addressed seniority, bridging of prior service, and layoffs. CTT further asserts that *Welsh* is inapposite to this case, and thus, that the trial judge erred by vacating the prior summary judgment order. Walton, on the other hand, contends that his fraud claim would not require interpretation of the collective-bargaining agreement and that *Welsh* controls. In addressing these contentions, we first examine general principles governing federal pre-emption.

Section 301 of the Labor Management Relations Act (also known as the Taft-Hartley Act), 29 U.S.C.A. Sec. 185(a), mandates federal adjudication of all claims — including those ostensibly grounded in state law — that require substantial interpretation of a collective-bargaining agreement for resolution. *See, e.g., Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 7 L.Ed. 2d 593 (1962) (recognizing pre-emptive effect of Section 301); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 85 L.Ed. 2d 206, 216 (1985) (Section 301 pre-empts any state-law "tort claim . . . inextricably intertwined with consideration of the terms of [a] labor contract"). The rationale behind pre-emption is that uniform federal interpretation of the terms of collective-bargaining agreements will "promote the peaceable, consistent resolution of labor-management disputes." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. ---, 100 L.Ed. 2d 410, 417 (1988). Of course, pre-emption does not mean that a plaintiff is without

a remedy; it simply means that the remedy must be sought in federal court.

A leading case on the pre-emptive effect of Section 301 on state-law claims is *Allis-Chalmers Corp. v. Lueck,* upon which both parties rely. In *Lueck,* an employee brought a state-law tort claim for bad faith handling of disability benefit payments due under a collective-bargaining agreement. Because the claim was rooted in the collective-bargaining contract and required interpretation of the contract's provisions, the Court held that the claim was federally pre-empted. The Court set out the following rule: "when resolution of a state-law claim is *substantially dependent upon analysis of the terms of [a collective-bargaining] agreement . . . , that claim must either be treated as a [Section] 301 claim . . . or dismissed as pre-empted* by federal labor-contract law." 471 U.S. at 220, 85 L.Ed. 2d at 221 (emphasis added) (citations omitted).

However, the Court limited its holding:

> Of course, *not every dispute* concerning employment, or *tangentially involving a provision of a collective-bargaining agreement, is pre-empted by [Section] 301* or other provisions of the federal labor law. . . . In extending the pre-emptive effect of [Section] 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt *state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.*

*Id.* at 211-12, 85 L.Ed. 2d at 215-16 (emphasis added). The Court continued, explicitly "emphasizing the narrow focus of [its] conclusion":

> *[We do not] hold that every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement, necessarily is pre-empted by [Section] 301.* The full scope of the pre-emptive effect of federal labor-contract law remains to be fleshed out on a case-by-case basis.

*Id.* at 220, 85 L.Ed. 2d at 221 (emphasis added).

*Lueck* was "fleshed out" in *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 96 L.Ed. 2d 318 (1987). *Caterpillar,* factually similar to the case before us, involved employees covered by a collective-bargaining agreement who were laid off even though their employer

had allegedly made representations assuring them job security. The employees sued for breach of their individual employment contracts, fraud, and other tortious conduct. The unanimous Court held that the state-law claims were not "completely pre-empted" by Section 301 since that section controls only "[1] claims founded *directly on rights created by collective-bargaining agreements,* and . . . [2] claims '*substantially dependent on analysis of a collective-bargaining agreement.*' " *Id.* at ---, 96 L.Ed. 2d at 328 (emphasis added) (citations omitted).

The Court explained that the employees' power to assert claims based upon pre-existing oral contracts with their employer was not abrogated simply because they were also covered by a collective-bargaining agreement at the time of the layoff:

> . . . [I]ndividual employment contracts are not inevitably superseded by any subsequent collective agreement covering an individual employee, and claims based upon them may arise under state law. . . . [A] plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement.

*Id.* at ---, 96 L.Ed. 2d at 329-30 (emphasis supplied). *Cf. Lingle,* 486 U.S. at ---, 100 L.Ed. 2d at 419 (Court unanimously held that employee's state-law claim for retaliatory discharge was not pre-empted by Section 301 because it was not necessary to interpret terms of collective-bargaining agreement to establish elements of state-law tort); *Electrical Workers v. Hechler,* 481 U.S. 851, 95 L.Ed. 2d 791, 803 (1987) (employee's state-law tort claim held clearly pre-empted by Section 301 because claim was based directly upon violations of collective-bargaining agreement and resolution required interpretation of agreement's terms).

A number of lower courts have considered the question now before us, that is, whether a state-law tort claim for misrepresentation and fraud, brought by an employee covered by a collective-bargaining agreement, was pre-empted by Section 301. Many courts have held that the claims were not pre-empted because the representations sued upon were independent of the collective-bargaining agreement, and resolution of the claims required no interpretation of the agreement. *See, e.g., Varnum v. Nu-Car Carriers, Inc.,* 804 F. 2d 638 (11th Cir. 1986), *cert. denied,* 481 U.S. 1049, 95 L.Ed.

2d 838 (1987) (representations made regarding seniority); *Andersen v. Ford Motor Co.*, 803 F. 2d 953 (8th Cir. 1986), *cert. denied,* --- U.S. ---, 97 L.Ed. 2d 747 (1987) (representations regarding "bumping" or layoffs); *Malia v. RCA Corp.*, 794 F. 2d 909 (3d Cir. 1986), *cert. denied,* --- U.S. ---, 96 L.Ed. 2d 696 (1987) (representations regarding promotion); *Miller v. Fairchild Indus., Inc.*, 668 F. Supp. 461 (D. Md. 1987) (representations regarding job security); *Paradis v. United Technologies*, 672 F. Supp. 67 (D. Conn. 1987) (representations regarding termination); *Muenchow v. Parker Pen Co.*, 615 F. Supp. 1405 (W.D. Wis. 1985) (representation that severance benefits would be exchanged for seniority rights). *Contra Bale v. Gen. Tel. Co. of Calif.*, 795 F. 2d 775 (9th Cir. 1986); *Martin v. Associated Truck Lines, Inc.*, 801 F. 2d 246 (6th Cir. 1986) (fraud and misrepresentation claims pre-empted because adjudication would require reference to and interpretation of terms of collective-bargaining agreement) (both cases decided before *Caterpillar*).

Until now, this state has not addressed the question of Section 301 pre-emption of state-law actions. However, this court has twice considered whether employees' state-law claims were federally pre-empted under "ERISA," 29 U.S.C.A. Secs. 1001, *et seq. See Welsh v. Northern Telecom, Inc.*, 85 N.C. App. 281, 354 S.E. 2d 746 (1987), *disc. rev. denied*, 320 N.C. 638, 360 S.E. 2d 107, *reconsideration dismissed*, 320 N.C. 798, 361 S.E. 2d 90 (1987); *Shaver v. Monroe Construction Co.*, 63 N.C. App. 605, 306 S.E. 2d 519 (1983), *disc. rev. denied*, 310 N.C. 154, 311 S.E. 2d 294 (1984). Because Section 301 "closely parallels" the pre-emption provisions of ERISA, *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 95 L.Ed. 2d 55 (1987), we consider *Welsh* and *Shaver* instructive in deciding the case before us. *Accord Tener v. Hoag*, 697 F. Supp. 196 (W.D. Pa. 1988).

In *Shaver*, an employee brought an action against his employer alleging that the employer misrepresented that the employee's pension benefits would continue in order to induce the employee to remain with the employer and to forego salary increases and bonuses. The fraudulent misrepresentation claim was held not pre-empted by ERISA because, among other things, the claim only incidentally or tangentially involved a pension plan, and did not concern the plan's substance or regulation. 63 N.C. App. at 610, 306 S.E. 2d at 523.

*Welsh*, upon which the trial judge relied in vacating his prior summary judgment order, involved facts similar to those in the present case. There, an employee alleged that a Northern Telecom

representative promised him that "if [he] came to work with Northern Telecom and worked there five years, [his] previous Bell System service would be bridged" for purposes of establishing entitlement to certain benefits. 85 N.C. App. at 283-84, 354 S.E. 2d at 747. The employee brought a breach of contract action when the employer later refused to bridge his prior service. The employer appealed from a jury verdict in favor of the employee, contending that the claim "related to" the employer's pension plan, and therefore was pre-empted under ERISA. Guided by *Shaver*, this Court rejected the employer's contention:

> [*Plaintiff's*] *action is not against the plan.* Rather, his action is against the defendant for failing to uphold its promise to provide benefits. . . . His claim neither concerns the substance of the pension plan nor the plan's regulation. The plan is only incidentally or tangentially involved. *Because plaintiff's claim is only tangential to the plan, his claim is not pre-empted by ERISA.*

*Id.* at 289, 354 S.E. 2d at 751 (emphasis added).

Applying the foregoing principles to the case before us, we hold that Walton's fraud and misrepresentation claim was not pre-empted by Section 301 of the Labor Management Relations Act. Walton's claim was neither "founded directly on rights created by [the] collective-bargaining agreement[ ]," nor will resolution of it be "substantially dependent on analysis of [the terms of the] collective-bargaining agreement." *Caterpillar*, 482 U.S. at ----, 96 L.Ed. 2d at 328 (quoting *Lueck*). Walton's fraud claim at most only tangentially concerns provisions of that agreement. *See Lueck*, 471 U.S. at 211-12, 85 L.Ed. 2d at 215-16; *Welsh; Shaver.*

Our holding does not undermine the principle honoring the sanctity of collective-bargaining agreements. It merely allows an employee to bring a state-law claim in state court if the claim is not founded directly upon the terms of a collective-bargaining agreement. *Accord Caterpillar*, 482 U.S. at ---, 96 L.Ed. 2d at 329-30 ("individual employment contracts are not inevitably superseded by any subsequent collective-bargaining agreement") (distinguishing *J.I. Case Co. v. NLRB*, 321 U.S. 332, 339, 88 L.Ed. 762, 768 (1944) ). Here, there is no direct challenge to the collective-bargaining agreement. *See id.* The alleged representations about which Walton complains were made independently of the collective-bargaining agreement. *See id.* Any other result might suggest that

an employer could flout with impunity the restrictive provisions of a collective-bargaining agreement by making individual, independent promises to an employee, and then raise the collective-bargaining agreement as a defense when the employee seeks to have those promises fulfilled. In our view, an employee should be entitled to sue in state court for allegedly fraudulent promises made by an employer, even if those promises contravene the terms of a collective-bargaining agreement, so long as resolution of the claim does not require interpretation of that agreement. *See id.* at ---, 96 L.Ed. 2d at 331.

This assignment of error is overruled.

### III

[2] CTT contends that it was entitled to summary judgment as a matter of law because Walton's 1985 fraud claim was barred by the three-year statute of limitations. CTT argues that Walton knew of or should have known of the alleged fraud (1) in December 1978, when the first IBEW contract was renewed, or (2) in January 1981, when a grievance brought by the union on Walton's behalf was denied. Walton asserts that it was not until 1983, when CTT began laying off employees, that he first realized that CTT was not going to honor its promise that his seniority would be bridged for all purposes after five years of work.

In light of *Caterpillar's* holding that an employee's independent contract is "not inevitably superseded by any subsequent collective-bargaining agreement," we do not discuss whether Walton knew or should have known of the alleged fraud at the time the IBEW contract was renewed. Instead, we examine the notice issue in connection with Walton's grievance.

A. Walton's Grievance

Sometime in 1980, Walton contacted United Telecommunications, CTT's parent company, regarding the credit he expected to receive for his prior NEC service. (It is not clear from the record why Walton made this inquiry after only two years of employment with CTT.) In response to Walton's communication, a United Telecommunications representative sent a letter to CTT's plant manager. The letter stated:

We recently received an inquiry from Newton Walton . . . concerning credit for service with [NEC] prior to merger of

**WALTON v. CAROLINA TELEPHONE**

[93 N.C. App. 368 (1989)]

that company with ITT. . . . *[S]uch service is creditable for all purposes except pension computation.* This would include such things as eligibility for sickness payments and vacations, choice of work schedules, as well as pension eligibility. . . . [I]f Mr. Walton will provide us with evidence of his previous employment with [NEC], we will make a special annotation on his personnel record card indicating that *his service for all purposes except pension computation has been bridged to include his service with that company.*

(Emphasis added.) CTT representatives then discussed the letter with Walton, and—even though Walton had not yet worked at CTT for five years—acted to extend his CTT "net credited service" date to his starting date at NEC.

In December 1980, Walton filed a formal grievance against CTT regarding denial of certain privileges he believed accompanied the extension of his net credited service date. The basis of the grievance was that Walton had not been permitted to exercise work schedule privileges or preferential vacation selection. Walton's grievance did not concern that aspect of seniority which determines layoff status.

In January 1981, CTT made the following disposition of Walton's grievance:

Mr. Walton's "Net Credited Service" date was changed to include the period from 9-8-1970 to 1-21-1978 that he was employed by [NEC]. . . . This *"Net Credited Service" date is used,* as outlined in the definitions for the IBEW contract, *for computing eligibility for pension and benefits. Seniority for selection of work tours and vacation schedules along with determining layoff status is defined* in Article 11, paragraph 11.01 [of the IBEW contract] *as continuous work with the company* at the specified locations. *The contract does not permit using "Net Credited Service" for these selections.*

(Emphasis added.) Walton's grievance was denied on the ground that IBEW contract provisions had not been violated. The union chose not to pursue Walton's grievance further.

Walton then wrote to United Telecommunications, again complaining about his work and vacation selections. Walton claimed that he was being denied his "full Seniority rights, including Schedule Selection Privileg[e]s," stating that ". . . in a Grievance meeting

with the Company I was told . . . I would not be allowed Schedule or Vacation Selection according to my Seniority Status because of a term in the [IBEW] Contract denying me of these rights." Walton did not raise an issue about the effect his seniority had on his layoff status. In April 1981, a company representative responded, explaining to Walton that

> . . . an error had been made when you were mistakenly told that full seniority rights would be extended to you upon employment with Carolina Telephone. . . . While the rule prevents you from exercising competitive seniority rights using your total service within United Telecommunications, Inc., most employees prefer to have protection in the contract which prevents more senior employees from being transferred into their company and exercising seniority over them. . . . We understand your dissatisfaction, particularly after having been given erroneous information, but nonetheless we must abide by the provisions of a legal and binding [IBEW] contract.

This letter did not specifically address Walton's seniority as it pertained to layoffs. Walton contends that he continued to believe, based on the representations made to him before he transferred to CTT, that his seniority would be bridged for that and all other purposes after five years of work with CTT.

B. Appropriateness of Summary Judgment in Fraud Actions

Summary judgment in a fraud action, as in other cases, should be granted when the pleadings, depositions, interrogatories, admissions on file, and affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* N.C. Gen. Stat. Sec. 1A-1, R. Civ. P. 56 (1983); *Johnson v. Phoenix Mut. Life Ins. Co.*, 300 N.C. 247, 266 S.E. 2d 610 (1980). While "[a]llegations of fraud do not readily lend themselves to resolution by way of summary judgment," *Johnson*, 300 N.C. at 260, 266 S.E. 2d at 619, it is also true that summary judgment is proper when it appears as a matter of law that the statute of limitations on the fraud action has expired. *See, e.g., Hiatt v. Burlington Indus., Inc.*, 55 N.C. App. 523, 286 S.E. 2d 566 (1982), *disc. rev. denied*, 305 N.C. 395, 290 S.E. 2d 566 (1982).

The statute of limitations for fraud is three years from the date the fraud was, or reasonably should have been, discovered.

N.C. Gen. Stat. Sec. 1-52(9) (1983); *Feibus & Co., Inc. v. Godley Constr. Co., Inc.*, 301 N.C. 294, 304, 271 S.E. 2d 385, 391 (1980), *reh'g denied*, 301 N.C. 727, 274 S.E. 2d 228 (1981). "Because fraud is difficult to define, it is likewise difficult to establish with certainty when the statute of limitations on a claim of fraud begins to run." *Jennings v. Lindsey*, 68 N.C. App. 710, 715, 318 S.E. 2d 318, 321 (1984). Thus, whether a plaintiff should have discovered the facts constituting the fraud more than three years before the action was filed ordinarily is a *question of fact for the jury*. *Feibus*, 301 N.C. at 305, 271 S.E. 2d at 392; *see, e.g., Cowart v. Whitley*, 39 N.C. App. 662, 664, 251 S.E. 2d 627, 629 (1979). Only when "it clearly appears that plaintiff's claim is barred by the running of the statute of limitations," may that question be determined as a *matter of law*. *Poston v. Morgan-Schultheiss, Inc.*, 46 N.C. App. 321, 323, 265 S.E. 2d 615 (1980), *cert. denied*, 301 N.C. 95 (1980). *See, e.g., Hiatt*, 55 N.C. App. at 527-29, 286 S.E. 2d at 568-70 (deposition testimony clearly showed plaintiff's knowledge of matters allegedly constituting fraud; case provided "an example of inexcusable procrastination even after discovery of the facts which plaintiff contends constituted fraud"); *Brown v. Vick*, 23 N.C. App. 404, 407-09, 209 S.E. 2d 342, 344-45 (1974), *cert. denied*, 286 N.C. 412, 211 S.E. 2d 216 (1975) (clear that party had knowledge of all the facts and circumstances surrounding the alleged fraud). However, "summary judgment [is] inappropriate in a fraud case [whenever] the court is called upon to draw a factual inference in favor of the moving party. . . ." *Johnson*, 300 N.C. at 260, 266 S.E. 2d at 619.

C. Jury Question Whether Statute of Limitations Expired

With the foregoing principles in mind, we cannot say that the 1981 disposition of Walton's grievance or the subsequent letter should have, *as a matter of law*, put Walton on notice that his seniority would not be bridged for any purpose, including layoff status, after five years of employment. Viewing the evidence in a light most favorable to Walton, *see Cowart*, 39 N.C. App. at 664, 251 S.E. 2d at 629, it appears that the focus of the grievance was whether Walton's net credited service entitled him to preferential selection of work schedules and vacation times; the disposition merely informed him that the term "net credited service" did not apply to those privileges or to layoffs. In our view, it is a question for the jury whether, at that point, three years into his CTT employment, Walton should have known of the alleged fraud, or whether

he reasonably continued to rely upon CTT's earlier representations until 1983, when, after five years of work, he was laid off.

Although we express no opinion whether the evidence is sufficient to support an ultimate finding in Walton's favor, "we do consider [the evidence] sufficient to create an issue of fact for the jury. . . ." *Feibus*, 301 N.C. at 305, 271 S.E. 2d at 392. Accordingly, this assignment of error is overruled.

## IV

[3] CTT's contention that Walton's action is barred by the employment at will doctrine is without merit. Walton is not suing for wrongful discharge; his complaint asserts that he was fraudulently induced to come to work for CTT.

## V

We hold that the trial judge properly denied CTT's motion for summary judgment because Walton's claim was neither federally pre-empted nor time-barred, and we order that the trial proceed.

Affirmed.

Judges WELLS and JOHNSON concur.