LIGGETT GROUP INC., Plaintiff v. ERNEST C. SUNAS, Defendant

No. 9114SC957

(Filed 21 December 1993)

**1. Appeal and Error § 89 (NCI4th) — partial summary judgment — ownership of patent — substantial right affected — appealable**

The grant of partial summary judgment for plaintiff in an action involving ownership of a patent for a tobacco quick-aging process was immediately appealable as affecting a substantial right where the trial court effectively decided that ownership of the process rested with plaintiff by granting summary judgment on the first of plaintiff's six claims. This determination was fundamental to the disposition of plaintiff's remaining claims.

**Am Jur 2d, Appeal and Error § 62.**

**2. Labor and Employment § 55 (NCI4th) — employee invention — ownership of patent — summary judgment for employer — error**

The trial court erred in granting summary judgment for plaintiff-employer on its first cause of action in a declaratory judgment action in which plaintiff sought to have its employee assign to it ownership of a patent for a quick-aging process for tobacco. The parties appear to agree that defendant invented the quick-aging process; there was no written contract detailing defendant's duties as an analytic chemist; the affidavits and depositions establish that defendant was not originally hired to invent; the record is devoid of any evidence of an agreement between defendant and plaintiff that a handbook on which plaintiff relied was incorporated into defendant's terms of employment; the handbook was first issued in 1976, years after defendant began his employment, and the contents appear to have been unilaterally implemented by plaintiff; the affidavit of a former employee of the Research Department contradicts the existence of any policy with regard to assignment of inventions between 1952 and 1973; while it is not clear whether defendant was directed to experiment with the quick-aging of tobacco earlier, there is no disagreement that plaintiff was told to continue work on the process in 1981; and the determination of whether defendant reduced his theory to practice only after being set to experimenting

LIGGETT GROUP v. SUNAS

[113 N.C. App. 19 (1993)]

with the view of making an invention in 1981 was a determination for a trier of fact.

**Am Jur 2d, Master and Servant §§ 111-120.**

3. **Labor and Employment § 65 (NCI4th); Fraud, Deceit, and Misrepresentation § 38 (NCI4th)— promise to rehire if early retirement taken—employment at will—summary judgment not proper**

The trial court erred by entering summary judgment dismissing a counterclaim for fraudulent misrepresentation where each of the requisite elements was adequately pled by the employee and evidence was offered to support each element. A counterclaim for fraudulent misrepresentation is not barred merely because it concerns a promissory representation; fraud can be predicated upon a promissory representation when the promise is made with the intent to deceive and the promisor has no intent of performing his promise. Although the employer argues that the counterclaim is barred by the terminable-at-will doctrine, the employee is claiming that he was fraudulently induced into accepting early retirement and is not suing for wrongful discharge.

**Am Jur 2d, Fraud and Deceit § 481 et seq.; Master and Servant § 33.**

4. **Unfair Competition § 1 (NCI3d)— inducement to accept early retirement—unfair and deceptive practices—not applicable**

Employer-employee relationships do not fall within the scope of N.C.G.S. § 75-1.1 and the trial court properly entered summary judgment on a counterclaim for unfair and deceptive practices alleging the fraudulent inducement of retirement.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 696, 697, 714.**

**Practices forbidden by state deceptive trade practice and consumer protection acts. 89 ALR3d 449.**

Appeal by defendant from orders entered 22 January 1991 and 14 May 1991 by Judge Orlando F. Hudson in Durham County Superior Court. Heard in the Court of Appeals 13 November 1992.

## LIGGETT GROUP v. SUNAS

[113 N.C. App. 19 (1993)]

*Newsom, Graham, Hedrick, Bryson & Kennon, by William P. Daniell and Joel M. Craig, for plaintiff-appellee.*

*Upchurch & Galifianakis, by Nick Galifianakis, and Lee L. Corum for defendant-appellant.*

JOHN, Judge.

This action for declaratory and injunctive relief and for compensatory and punitive damages arises out of the issuance on 9 May 1989 of U.S. Letters Patent No. 4,827,949 (the patent) to defendant Ernest C. Sunas (Sunas), a retired employee of plaintiff Liggett Group Inc. (Liggett). Sunas contends the trial court erred by entering partial summary judgment on 22 January 1991 which (1) ordered Sunas to assign the patent to Liggett, and (2) dismissed his counterclaims. He also argues the trial court erred by denying his motion for a new hearing and to amend the summary judgment order. We agree in part and reverse the entry of summary judgment as to Liggett's initial claim and as to one of Sunas' counterclaims.

The pleadings, depositions, affidavits and other materials before the trial court indicate Sunas, from 1954 until his retirement in 1987, worked as an analytic chemist in the Research Department of Liggett, a Durham-based corporation engaged in the manufacture of tobacco products. Throughout his employ, Sunas served as an employee-at-will with no written contract.

The function of Liggett's Research Department was to study problems facing the tobacco industry with an aim towards developing new products and reducing manufacturing costs. One concern centered upon the cost of storing cured tobacco which must be properly aged before it can be manufactured into cigarettes. "Aging" is the chemical process where, over time, tobacco aroma and taste characteristics are enhanced resulting in tobacco suitable for consumer uses.

In the 1970s, Liggett began to experience financial difficulties, and a large number of Research Department employees consequently were discharged. Concerned about both his future and that of Liggett, Sunas began to consider ways of improving Liggett's fortunes. In 1979, while watching his mother-in-law bake bread, Sunas hypothesized that the same chemical process which creates a "wonderful aroma" in baking bread could be used to age tobacco

rapidly. If so, this would have financial benefit for Liggett by reducing storage costs.

Sunas began researching the chemical process at work in baking bread, commonly known as the "Maillard reaction." He eventually formulated an experiment by which he heated unaged tobacco treated with a simple sugar mixture. After a single experiment conducted on 19 February 1981, Sunas contacted Robert Kersey, Liggett's Director of Research. Kersey, impressed with the results, authorized Sunas to continue work on this method of quick-aging tobacco.

After further experimentation and refinement, Liggett's management approved a patent application for the quick-aging process. Sunas prepared a description and forwarded it to Liggett's patent counsel. The initial patent application designated Sunas, Kersey, and R.H. Wallick as co-inventors, but Sunas objected to inclusion of the others. A revised patent request was prepared listing Sunas as sole inventor, but at some point Liggett decided against patenting the procedure. Nevertheless, Sunas continued to work on refining it and making it commercially useful.

In November 1986, Liggett offered some of its employees, including Sunas, a special early retirement program whereby the employee would receive an increase in pension benefits by taking early retirement. At the time of this limited offer, Sunas was 66 years old and the mandatory retirement age at Liggett was 70. Sunas accepted the program and retired on 1 March 1987. Sunas claims, and Liggett denies, he was induced to accept early retirement by a verbal promise to be re-hired as a special consultant earning $200 per day.

After learning he would not be re-hired, Sunas decided to patent the quick-aging process and employed a Durham law firm as his patent counsel. In preparing a description, Sunas used copies of the original Liggett patent request forms he had retained. He also utilized an official Liggett laboratory notebook regarding the procedure which he had obtained after his retirement.

Sunas never notified Liggett he was seeking a patent, but an application was ultimately submitted to the U.S. Patent Office in September of 1987. Thereafter, Sunas began to contact Liggett's competitors in an effort to lease the process. Following an initial rejection of the application and subsequent modification thereto,

Sunas was issued Patent No. 4,827,949, entitled "Method of Treating Tobacco and Tobacco Produced Thereby."

On 23 June 1989, after receiving notice of Sunas' patent, Liggett instituted the instant lawsuit alleging six (6) claims: (1) a request for declaratory relief ordering Sunas to assign the patent to Liggett; (2) misappropriation of the quick-aging process; (3) breach of confidentiality by informing others of the process; (4) breach of fiduciary duties; (5) misappropriation of trade secrets; and (6) a request for injunctive relief to prohibit Sunas and others from utilizing the patented process.

After the trial court ordered temporary injunctive relief, Sunas answered the complaint, denying all material allegations and asserting several counterclaims.

On 18 October 1990, Liggett moved for summary judgment. By order entered 22 January 1991, the trial court granted Liggett partial summary judgment which (1) ordered Sunas to assign the patent to Liggett, and (2) dismissed all of Sunas' counterclaims, but (3) expressly withheld determination regarding Liggett's remaining claims.

On 28 January 1991, Sunas moved for (1) a new hearing and (2) an amendment to the summary judgment order. By order entered 14 May 1991, these motions were denied.

I.

[1] Initially, we must resolve Liggett's motion, filed in this Court, seeking dismissal of Sunas' appeal as interlocutory. A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal. N.C.R. Civ. P. 54(b) (1990); *Britt v. American Hoist & Derrick Co.*, 97 N.C. App. 442, 444, 388 S.E.2d 613, 615 (1990). Such a prohibition promotes judicial economy by preventing fragmentary appeals. *Blue Ridge Sportcycle Co. v. Schroader*, 53 N.C. App. 354, 358, 280 S.E.2d 799, 801-02 (1981).

Nonetheless, in two instances a party is permitted to appeal interlocutory orders: *first*, where there has been a final determination of at least one claim, and the trial court certifies there is no just reason to delay the appeal, Rule 54(b); *Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 24, 376 S.E.2d 488, 490-91, *disc. review denied*, 324 N.C. 577, 381 S.E.2d 772 (1989); and *second*,

if delaying the appeal would prejudice a "substantial right." *Knauff Ins.*, 93 N.C. App. at 24, 376 S.E.2d at 491. As the court below made no certification, the first avenue of appeal is closed.

Regarding the second, it has been frequently noted the substantial right test is much more easily stated than applied. *Green v. Duke Power Co.*, 305 N.C. 603, 606, 290 S.E.2d 593, 595 (1982). There are few general principles governing what constitutes a "substantial right" and thus it is usually necessary to consider the particular facts of each case and the procedural context in which the interlocutory decree was entered. *Id.; Knauff Ins.*, 93 N.C. App. at 24, 376 S.E.2d at 491. A substantial right, however, is considered affected if "there are overlapping factual issues between the claim determined and any claims which have not yet been determined" because such overlap creates the potential for inconsistent verdicts resulting from two trials on the same factual issues. *Knauff Ins.*, 93 N.C. App. at 26, 376 S.E.2d at 492.

In the case *sub judice*, because of the close relationship between the claim of Liggett adjudicated by the trial court and those which remain, we believe a "substantial right" is involved. By granting summary judgment on Liggett's first claim, thereby ordering Sunas to assign the patent, the trial court effectively decided ownership of the patented quick-aging process rested with Liggett. This determination is fundamental to the disposition of Liggett's remaining claims. If Liggett prevailed at trial on those counts, and upon Sunas' subsequent appeal this Court held ownership of the process to be a jury question, Sunas would thereby likely be awarded a new trial on all (6) six of Liggett's claims. Requiring such adjudication of the same claims in two separate trials would result in needless expense to the parties as well as to our court system. Upon the circumstances presented, we conclude the grant of summary judgment on Liggett's first claim is immediately appealable as affecting a substantial right. *Roberts v. Heffner*, 51 N.C. App. 646, 650, 277 S.E.2d 446, 449 (1981).

Without deciding whether a substantial right is affected, we also elect to review the trial court's dismissal of Sunas' counterclaims. This Court is free to exercise its discretion and rule on an interlocutory appeal where our decision would expedite the administration of justice. *Green v. Duke Power*, 305 N.C. at 608, 290 S.E.2d at 596.

## II.

[2] Turning to the substantive issues raised by this appeal, we first examine whether the trial court erred in granting summary judgment on Liggett's first claim.

Summary judgment for Liggett was proper only if the pleadings and evidence before the trial court demonstrated there existed no genuine material issue of fact and that Liggett was entitled to judgment regarding ownership of the quick-aging process as a matter of law. N.C.R. Civ. P. 56(c) (1990); *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 62, 414 S.E.2d 339, 341-42 (1992). The burden of establishing a lack of any triable issue of fact resides with Liggett as movant and thus all evidence must be viewed in the light most favorable to Sunas. *Roumillat*, 331 N.C. at 62-63, 414 S.E.2d at 342.

Liggett urges us to affirm the trial court, contending it correctly determined as a matter of law Liggett's right to the patented quick-aging process. We disagree and hold the issue of ownership under the facts of this case should be determined by the trier of fact.

The question of who owns patented inventions, employer or employee, is not novel. Although our own appellate courts have not considered this problem frequently, the basic rules governing its resolution are well established. In such controversies, inventorship provides the starting point for determining ownership of patent rights. *See* Ernest B. Lipscomb, *Walker on Patents* § 3.2 (3d ed. 1984). In the case *sub judice*, the parties appear to agree Sunas invented the quick-aging process.

The preliminary question being thus uncontroverted, the contract of employment between the inventor Sunas and his employer determines their respective rights to Sunas' invention. *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 187, 77 L.Ed. 1114, 1118, *amended by*, 289 U.S. 706, 77 L.Ed. 1462 (1933); *Speck v. N.C. Dairy Foundation, Inc.*, 311 N.C. 679, 686, 319 S.E.2d 139, 143 (1984). The fact of employment, standing alone, does not endow an employer with exclusive ownership rights to an invention, even though the invention may occur during working hours. 30 C.J.S. *Employer-Employee* § 117, at 185-86 (1992). In *Speck*, our Supreme Court declared that, absent contrary agreement, the employer owns an invention if: (1) the employee is "hired to invent, accomplish

a prescribed result, or aid in the development of products," or (2) the employee is set to experimenting with the view of making an invention and accepts payment for such work. *Speck*, 311 N.C. at 686-87, 319 S.E.2d at 143-44.

In the case *sub judice*, as in *Speck*, there was no written contract detailing Sunas' duties as an analytic chemist. Furthermore, the affidavits and depositions presented in this case establish Sunas was not originally hired to invent.

However, Liggett argues the existence of a company policy constituted an express contract between it and Sunas as part of his oral employment agreement. Liggett points to the provisions contained in an employee handbook and to sworn statements of certain supervisory employees regarding a "longstanding (albeit unwritten) custom and policy that all inventions made in the course of employment were property of the company." This contention is unavailing for several reasons. *First*, the record is devoid of any evidence indicating agreement between Sunas and Liggett that the handbook was incorporated into Sunas' terms of employment. *Second*, the handbook was first issued in 1976, years after Sunas began his employment, and the contents thereof appear to have been unilaterally implemented by Liggett. *Third*, this Court in *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E.2d 79 (1985), *disc. review denied*, 315 N.C. 597, 341 S.E.2d 39 (1986), held "unilaterally promulgated employment manuals or policies do not become part of the employment contract unless expressly included in it." *Id.* at 259, 335 S.E.2d at 83-84. *Finally*, the affidavit of a former employee of the Research Department offered by Sunas contradicts the existence of any policy with regard to assignment of inventions between 1952-1973.

Since Sunas was not "hired to invent" and since there exists at best a question of fact as to the existence of an express agreement or policy that Liggett owned any inventions, summary judgment determining the patented quick-aging process belongs to Liggett was appropriate only if the second approach set forth in *Speck* has application.

Under this second approach, "[i]t matters not in what capacity the employee may originally have been hired[;] if he be set to experimenting with the view of making an invention, and accepts pay for such work, . . . what he accomplishes by the experiments belongs to the employer." *Speck*, 311 N.C. at 686, 319 S.E.2d at

144 (quoting *Houghton v. United States*, 23 F.2d 386, 390 (4th Cir. 1928) ). Thus, we must initially consider the evidence as to when Sunas was "set to experimenting."

Liggett contends Sunas was directed to experiment with the quick-aging process in September of 1980. This argument is based upon a written memorandum to Liggett's Vice-President of Research from Sunas dated 30 September 1980 in which Sunas requested to pursue research on "sugar-amino acid reactions" and to "[s]tudy the possibility of upgrading less desirable tobaccos by 'in situ' production of their flavorants." While Liggett's argument finds support in the evidence, we cannot hold as a matter of law Sunas was set to experimenting on the quick-aging process in 1980.

Preliminarily, it is controverted whether Liggett ever responded to Sunas' September 1980 query. More importantly, the contents of the document itself raise a factual dispute concerning whether it encompassed matters relating to the quick-aging process. The subject is denominated "Improve Aroma & Taste of Our Cigarettes," and Sunas' request makes no reference to the quick-aging process. Indeed, the critical terms "rapid," "accelerated," "quick," or "forced aging" are contained nowhere therein. Additionally, according to Sunas' affidavit introduced at the hearing, the memorandum pertains to matters unrelated to the quick-aging process, *i.e.*, the development of analytical procedures for identification of certain flavor compounds in tobacco used by Liggett at that time.

While the effect of the 30 November 1980 memorandum is thus unclear, there appears no disagreement Liggett directed Sunas to experiment with quick-aging of tobacco on 19 February 1981. On that date, Sunas approached his supervisor with the results of his initial quick-aging experiment and was told to continue work on the process. Accordingly, we must examine whether the evidence conclusively shows the quick-aging process was invented *after* 19 February 1981. If Liggett directed Sunas to develop the quick-aging process and Sunas *thereafter invented the process*, then under *Speck* the patented process would belong to Liggett as a matter of law and summary judgment for Liggett was proper.

Establishing the exact moment an invention comes into existence is ordinarily difficult and best left to the finder of fact. *See Walker on Patents* § 3.11. While not readily susceptible to definition, "invention" is generally considered to occur when two components, one mental and one physical, are present. *Walker on*

*Patents* § 3.12, at 224; 60 Am. Jur.2d *Patents* § 77, at 87 (1987). The mental component is satisfied at the moment the inventor completely conceives his invention. 69 C.J.S. *Patents* § 53, at 253 (1951); *Walker on Patents* § 3.11. The physical component is satisfied when the inventor reduces his idea to practice, thereby embodying it in some physical form. *Walker on Patents* § 3.12, at 224. Discerning the exact instant of "reduction to practice" is often problematical. Over one hundred years ago, in deciding whether Alexander Graham Bell sufficiently reduced his idea of the telephone to practice, the Supreme Court observed:

> The law does not require that a discoverer or inventor, in order to get a patent for a process, must have succeeded in bringing his art to the highest degree of perfection. It is enough if he describes his method with sufficient clearness and precision to enable those skilled in the matter to understand what the process is, and if he points out some practical way of putting it into operation.

*The Telephone Cases*, 126 U.S. 1, 536, 31 L.Ed. 863, 990 (1888). Commentator Lipscomb offers perhaps the most practical test for when an inventor's idea is "reduced to practice": "[t]he efforts of the inventor must have passed beyond experiment and beyond the reach of possible or probable failure, must have attained certainty by embodiment in the intended form, and must be capable of producing the desired result." *Walker on Patents* § 3.12, at 227.

Moreover, when the invention is a process, such as in the present case, "reduction to practice" occurs at the moment the process is successfully performed. *Corona Cord Tire Co. v. Dovan Chemical Corp.*, 276 U.S. 358, 383, 72 L.Ed. 610, 619 (1928). While the inventor's efforts must necessarily have passed beyond "[c]rude and imperfect experiments," *Seymour v. Osborne*, 78 U.S. 516, 552, 20 L.Ed. 33, 41 (1871), it is not required at this point that the process be perfect and incapable of improvement, *Land v. Regan*, 342 F.2d 92, 98 (C.C.P.A. 1965), or that it be embodied in a commercially acceptable form. *Id.* at 97; 60 Am. Jur.2d *Patents* § 81, at 90.

Evidence in the case *sub judice* indicated Sunas' process, conceived in his mother-in-law's kitchen, involved the application of sugars, amino acids and other chemicals to unaged tobacco. It was then heated, inducing a chemical reaction known as the "Maillard reaction" which artificially and quickly aged the tobacco. The evidence, viewed in the light most favorable to Sunas, shows he

was able to invoke the Maillard reaction successfully in his first experiment on 19 February 1981, thereby proving his scientific theory by "quick-aging" a small quantity of unaged tobacco. Sunas concedes, and other evidence indicates, further experimentation was needed to determine what combination of chemicals would yield the most desirable flavors in the most cost-efficient fashion. Additionally, the quick-aging process was not employed under production conditions until 1984. However, as noted above, reducing an idea to practice does not require the process to be embodied in a commercially acceptable form. *See* discussion of *Land v. Regan, supra.* We hold the evidence presented is *not* susceptible to the single conclusion that Sunas reduced his theory to practice (thereby "inventing" the quick-aging process) only after being "set to experimenting with the view of making an invention" on 19 February 1991, but rather that determination of this issue is for the trier of fact. Accordingly, we hold the trial court erred in granting summary judgment for Liggett on its first cause of action.

## III.

Sunas contends the trial court also erred by dismissing his counterclaims. While not models of clarity, the counts in Sunas' counterclaim under our liberal pleading rules arguably state claims for: (1) breach of contract based upon Liggett's failure to rehire Sunas; (2) fraudulent misrepresentation based upon Liggett's intentionally inducing him to retire; (3) intentional infliction of emotional distress based upon several alleged wrongful acts; (4) unjust enrichment based upon Liggett wrongfully depriving Sunas of the quick-aging process; and (5) unfair or deceptive practices under N.C.G.S. § 75-1.1, -16 (1988).

## A.

On appeal, Sunas asserts only that the evidence shows "the consultant agreement induced him to accept early retirement." This brief argument will not permit appellate review of each counterclaim. Under our appellate rules, "[a]ssignments of error . . . in support of which no reason or argument is stated or authority cited, will be taken as abandoned." N.C.R. App. P. 28(b)(5). We have consistently interpreted this rule as requiring a question to be both presented *and argued* in the appellant's brief. *In re Environmental Management Comm'n.*, 80 N.C. App. 1, 18, 341 S.E.2d 588, 598, *disc. review denied,* 317 N.C. 334, 346 S.E.2d 139 (1986). Even broadly construed, Sunas' argument in his appellate brief encom-

passes only two claims: (1) fraud and (2) unfair and deceptive prac-
tices based upon Liggett fraudulently inducing him to accept early
retirement. Accordingly, any questions concerning the dismissal
of Sunas' remaining counterclaims are deemed abandoned.

## B.

[3] The essential elements of Sunas' first claim, *fraudulent
misrepresentation*, are as follows: (1) a false representation or con-
cealment of a material fact; (2) reasonably calculated to deceive;
(3) made with the intent to deceive; (4) which the injured person
reasonably relies upon; (5) resulting in damage to the injured
party. *Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461,
468, 343 S.E.2d 174, 178 (1986); *Briggs v. Mid-State Oil Co.*, 53
N.C. App. 203, 207, 280 S.E.2d 501, 504 (1981). Unlike the plain-
tiff in *Briggs*, Sunas has adequately plead each of these requisite
elements, and has also offered evidence (including affidavits from
himself and his spouse as well as that of Peter N. Marinos) which
when viewed in the most favorable light tends to support each
element.

We further note Sunas' counterclaim for fraudulent misrepresen-
tation is not barred merely because it concerns a *promissory
representation* — Liggett's promise to rehire Sunas if he took early
retirement. Fraud can be predicated upon a promissory representa-
tion when the promise is made with the intent to deceive and
the promisor has no intent of performing his promise. *Leake v.
Sunbelt Ltd. of Raleigh*, 93 N.C. App. 199, 204-05, 377 S.E.2d 285,
289, *disc. review denied*, 324 N.C. 578, 381 S.E.2d 774 (1989). Sunas
has sufficiently alleged these elements and produced sufficient
evidence to withstand summary judgment on his claim based upon
fraud.

However, Liggett argues Sunas' counterclaim for fraud is in
any event barred by application of the terminable-at-will doctrine.
At first blush, we are inclined to agree. For the duration of his
employ, Sunas was an employee-at-will, subject to termination with
only limited exception. *See Tompkins v. Allen*, 107 N.C. App. 620,
421 S.E.2d 176 (1992) (summarizing North Carolina law on wrongful
discharge of terminable-at-will employees), *disc. review denied*, 333
N.C. 348, 426 S.E.2d 713 (1993). However, under authority of *Walton
v. Carolina Telephone and Telegraph Co.*, 93 N.C. App. 368, 378
S.E.2d 427, *disc. review denied*, 325 N.C. 230, 381 S.E.2d 792 (1989),
we are constrained to hold otherwise.

LIGGETT GROUP v. SUNAS

[113 N.C. App. 19 (1993)]

The plaintiff-employee in *Walton* alleged defendant (CTT) induced him to leave NEC and accept employment with CTT by promising favorable seniority status. CTT later refused to grant plaintiff senior status explaining this was prohibited under existing union agreements. Plaintiff subsequently lost his job because his seniority status was insufficient to withstand a lay-off. This Court ruled the employment-at-will doctrine did not bar plaintiff's action: the employee "is not suing for wrongful discharge; his complaint asserts that he was fraudulently induced to come to work for CTT." *Walton*, 93 N.C. App. at 380, 378 S.E.2d at 434.

As in *Walton*, Sunas is not suing for wrongful discharge; he claims he was fraudulently induced into accepting early retirement. Under these circumstances, any attempt to distinguish *Walton* would involve imperfect line-drawing and could only add confusion to the law in this area. Accordingly, we hold the terminable-at-will doctrine will not, under the facts of this case, bar Sunas' action for fraudulent misrepresentation and the trial court erred by entering summary judgment dismissing this counterclaim.

C.

[4] With regard to Sunas' counterclaim for unfair and deceptive practices, we have previously held employer-employee relationships do not fall within the scope of G.S. 75-1.1. *American Marble Corp. v. Crawford*, 84 N.C. App. 86, 88, 351 S.E.2d 848, 849-50, *disc. review denied*, 319 N.C. 464, 356 S.E.2d 1 (1987). Accordingly, the trial court properly entered summary judgment on this counterclaim.

To summarize, the trial court's entry of summary judgment in favor of Liggett on Count I of Liggett's complaint and on Sunas' counterclaim for fraudulent misrepresentation is reversed; the entry of summary judgment as to Sunas' remaining counterclaims is affirmed. In view of these holdings, we find it unnecessary to examine Sunas' remaining contentions.

Affirmed in part, reversed in part.

Judges EAGLES and ORR concur.