Argued and submitted September 28, 1998, affirmed June 28, 2000

## Richard SMOLDT,
*Appellant,*

*v.*

## HENKELS & McCOY, INC.,
*Respondent.*

(C96110508; CA A97994)

7 P3d 638

Jacqueline L. Koch argued the cause for appellant. With her on the briefs was Findling & Johnson LLP.

Dian Rubanoff argued the cause for respondent. With her on the brief were Paula A. Barran and Lane Powell Spears Lubersky LLP.

Before Landau, Presiding Judge, and Wollheim and Brewer,* Judges.

BREWER J.

Wollheim, J., dissenting.

---

\* Brewer, J., *vice* Rossman, S. J.

## BREWER, J.

■ Plaintiff appeals from summary judgment in favor of defendant, his former employer, in this statutory wage claim action. ORS 652.140 to ORS 652.200. We review the record in the light most favorable to plaintiff in order to determine whether there are any genuine issues of material fact and whether defendant was entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997). Because the alleged oral employment agreement on which plaintiff relies is inconsistent with a collective bargaining agreement (CBA) that covered plaintiff's job position, his claim is preempted by the CBA under federal law. Therefore, we affirm.

In May 1996, plaintiff went to work for defendant under an oral agreement at a rate of pay of $14.48 per hour. Plaintiff's position was covered by the CBA between defendant and the local electrical workers' union. The CBA set the rate of pay for his position at $11.48 per hour. Plaintiff was told that he was required to join the union within 30 days of hire. When plaintiff received his first paycheck, he discovered that he had been paid at a rate of $11.48 per hour. Plaintiff also discovered that he had been paid for fewer hours than he had worked. Plaintiff immediately brought the discrepancy in his pay rate to his supervisor's attention. The supervisor informed plaintiff that his hourly rate of pay would be $11.48 and not $14.48. Plaintiff refused to accept the lower pay rate, demanded his full pay at $14.48 per hour, and quit work. Several days later, plaintiff informed defendant in writing about the shortage in hours and defendant paid plaintiff for that time at $11.48 per hour.

Plaintiff then filed this action to collect unpaid wages based on the disputed $3 per hour pay rate differential, ORS 652.140, to collect penalties for failure to pay wages when due, ORS 652.150, and to recover attorney fees and costs pursuant to ORS 652.200. Plaintiff did not assert any other claims against defendant. In its answer, defendant affirmatively alleged that plaintiff was employed under the terms of a CBA addressing payment of wages and that plaintiff's statutory wage claim was preempted by the CBA. The parties filed cross-motions for summary judgment, and the

trial court granted defendant's motion and entered judgment accordingly.

On appeal, plaintiff assigns error to the trial court's grant of summary judgment to defendant.[1] Plaintiff argues that he was entitled to payment of wages on termination of his employment in accordance with ORS 652.140(2). Defendant counters that plaintiff's claim is excluded from the Oregon wage claim law by ORS 652.140(5) or, alternatively, that it is preempted under federal law. We first consider the parties' disagreement concerning the application of the provisions of ORS 652.140, which provides, in part:

"(2)   When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment. If notice is not given to the employer, the wages shall be due and payable within five days, excluding Saturdays, Sundays and holidays, after the employee has quit, or the next regularly scheduled payday after the employee has quit, whichever event first occurs.

"* * * * *

"(5)   This section does not apply to employment for which a collective bargaining agreement otherwise provides for the payment of wages upon termination of employment."

Plaintiff argues that because the CBA does not explicitly provide for the payment of wages when an employee quits, as it does for layoffs or firing, subsection (2) required defendant to pay all wages due plaintiff within five days after he quit work. Defendant responds, among other arguments, that subsection (5) applies, because the CBA provides for the payment of wages on termination of employment and federal labor law prohibits a state court from interpreting the CBA to determine whether it specifically applies in these circumstances. In order to resolve the parties' dispute, we must decide what subsection (5) means.

---

[1] Plaintiff's remaining assignments of error do not merit discussion.

As it relates to the problem at hand, subsection (5) is ambiguous. It could be read to mean, as plaintiff asserts, that the inquiry whether a CBA provides for payment of wages on termination is specific with reference to an individual plaintiff's circumstances. Plaintiff makes a logical argument that only such a construction makes sense in the context of individual cases. Why, one wonders, should a CBA trump an employer's statutory obligation when it does not even provide for the payment of wages under the specific circumstances of the complaining employee's termination? On the other hand, subsection (5) could also rationally be interpreted, as defendant contends, to apply generally to any CBA that includes wage payment requirements in the event of *any* type of termination. That construction could, after all, reflect legislative respect for the possibility of broad subject matter preemption under federal law. The legislature's intent is simply not clear from the text and context of the statute. Therefore, we must seek further evidence of the statute's meaning from its legislative history. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611-12, 859 P2d 1143 (1993).

■ The limited legislative history of the statute tends to support plaintiff's interpretation. ORS 652.140 was amended in 1991, among other reasons, to add subsection (5). Or Laws 1991, ch 966, § 1. That provision apparently was, in part, the product of the following discussion between members of the House Labor Committee on May 15:

"Representative Johnson:

"The last thing is that the current law I don't believe has a clause in it that exempts any of the current law from collective bargaining agreements. But, I would suggest that ...

"Representative Mannix:

"If there is a collective bargaining agreement, wouldn't it take precedence?

"Representative Johnson:

"That's what I am getting at and I think we need to make that clear here that people can bargain to have different termination arrangements than what we are putting into law here.

"Representative Mannix:

> "That is a matter of contract law, though. If there is a collective bargaining agreement, they have to follow the collective bargaining agreement. That's a matter of a contract between the employer and employee. And, the collective bargaining agreement can be much more generous than the law. So I don't think we need to put something in here about that. * * *

"Representative Johnson:

> "As I say, current law doesn't have a clause in it that I see that says 'except as otherwise provided under a collective bargaining agreement,' or something like that.

"Representative Dominy:

> "Mr. Chair, there is some boilerplate language that has been used in other pieces of legislation that says that if there is a bargaining agreement that this law would not supersede it. And, I guess I would like to have it in there, but as long as legislative intent and record is very clear and that nobody objects and everyone in this committee says that they agree that if there is a contract negotiated that has something better than this like saying that they have to pay you at time of termination no matter what if that is what a contract said that this law would not supersede it. As long as that is clear for the record maybe we don't have to have it in the bill. But, if there is any opposition to that I would like to make it clear here and now and put it in the record.

"Representative Mannix:

> "Mr. Chair, I move to amend the bill to include a section which says: 'These provisions may be varied by a collective bargaining agreement.' "

It is evident that the legislative committee members recognized the possibility that a CBA might have "different termination arrangements" or might "vary" the statutory payment provisions. However, there is no evidence that the legislature intended the broad exclusion for which defendant argues. Instead, the discussion focused on possible differences between the provisions of ORS 652.140 and *more generous* termination provisions of a CBA. That discussion makes sense when analyzed in the context of the particular

circumstances of an employee's termination, because it compared employee rights under the statute with those provided, in a given instance, by a CBA. In view of that discussion, plaintiff's interpretation of the statute is the more reasonable one. We therefore conclude that subsection (5) requires a case specific determination of whether the CBA otherwise provided for the payment of wages on termination of plaintiff's employment.

■    The analysis does not end with the construction of ORS 652.140(5). Our construction merely places the issue of federal preemption into actual, rather than theoretical, play. Defendant argues that plaintiff's claim is preempted because its resolution requires interpretation of the CBA. Defendant relies on section 301 of the Labor Management Relations Act (LMRA), 29 USC § 185 (a), which has been construed to preempt state law claims that are based directly on rights created by a CBA, as well as claims that are substantially dependent on an interpretation of a CBA. *Caterpillar, Inc. v. Williams*, 482 US 386, 394, 107 S Ct 2425, 96 L Ed 2d 318 (1987). The preemption doctrine developed by the federal courts under section 301 prohibits judicial construction of CBAs out of deference to the arbitration clauses often found in such agreements and to promote consistency in their interpretation. *See Livadas v. Bradshaw*, 512 US 107, 121-22, 114 S Ct 2068, 129 L Ed 2d 93 (1994). "If judges construed labor agreements in the first instance, the [Supreme Court] believed that the arbitration process would be undermined, and there might be divergent readings of the labor agreement and interference with the grievance process itself." *Martin v. Shaw's Supermarkets, Inc.*, 105 F3d 40, 42, *cert den* 522 US 818 (1st Cir 1997).

In this case, however, it is obvious from the most superficial examination of the CBA that the provision on which defendant relies does not apply to the circumstances of plaintiff's termination. Section 4.15 of the CBA provides, in part:

"Upon being *laid off*, the employee or employees shall be paid all money due them. If an employee is *fired*, he shall be paid all money due him; and in the event the employee is

not paid all money due him, he shall receive pay at the regular rate until payment is made, not to exceed eight hours per day Monday through Friday, excluding Saturday, Sunday and holidays. If an employee is *terminated* because of incompetence, the Employer shall so notify the involved employee in writing. When an employee is *terminated* for any reason, the Employer shall complete a termination report furnished by the Local Union—one copy for the Employee, one copy for the Employer, and one copy for the Local Union." (Emphasis added.)

As plaintiff asserts, section 4.15 does not provide for the payment of wages to an employee who quits work. Defendant responds, in essence, that we may not read the provision carefully enough to ascertain precisely what it says. However, federal law does not require us to look at but not see what is plainly before us. The question is whether it is truly necessary to *interpret* the CBA in order to resolve plaintiff's argument that the CBA does not provide for the payment of wages when an employee quits.

In *Livadas*, the Supreme Court reiterated that "when the meaning of contract terms *is not the subject of dispute*, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." 512 US at 124 (citing *Lingle v. Norge Division of Magic Chef, Inc.*, 486 US 399, 413 n 12, 108 S Ct 1877, 100 L Ed 2d 410 (1988)) (emphasis added). In *Livadas*, the court observed that beyond the simple need to refer to bargained-for wages in computing a penalty owed under state law, the CBA was irrelevant to the dispute between the plaintiff and her employer. 512 US at 124-25.

"Courts confronted with state law claims must * * * locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims." *Lydon v. Boston Sand & Gravel Company*, 175 F3d 6, 10 (1st Cir 1999). Of course, it is not necessarily a simple matter to draw the line between the cursory form of consultation that occurred in *Livadas* and the most obvious examples of interpretation that would be required in other circumstances, for example, where the materiality of a

CBA provision is undisputed and its meaning is sincerely contested. However, *Livadas* has been understood to mean that preemption is required only if the court "would be required to interpret a *plausibly disputed* provision of the [CBA]." *Martin*, 105 F3d at 42 (emphasis added). In other words, there must be a "real interpretive dispute and not merely a pretended dispute." *Id*. If a CBA is "colorably inconsistent" with a state law claim, the latter is preempted because the determination of actual inconsistency would require interpretation of the CBA. *Id*. at 43-44.

The distinction drawn in *Martin* is perfectly sensible, because it avoids needless preemption of state law claims that are not colorably inconsistent with the terms of a CBA and whose resolution would not interfere with any arbitration process under the CBA. In this case, the meaning of section 4.15 of the CBA is not in actual, or even pretended, dispute. It simply does not include a payment provision pertaining to wages due on voluntary termination of employment. Because interpretation of the CBA—in the sense contemplated by the controlling cases—is not required, plaintiff's state law claim is not preempted on that ground.

■■ However, as defendant next observes, section 301 also preempts state law claims based on a collateral employment agreement that conflicts with the provisions of a CBA covering the employee's position. *Beals v. Kiewit Pacific Company*, 114 F3d 892, 894 (9th Cir 1997), *cert den* 522 US 1108 (1998). The problem for plaintiff is that his entitlement to a remedy under Oregon's wage statute depends on an agreement to pay a wage rate that is inconsistent with the applicable rate under the CBA. In *Beals*, an employee claimed that his employer had breached an agreement to pay a higher wage than was provided by the CBA. *Id*. The Ninth Circuit Court of Appeals held that the employee's claim was preempted by section 301, because the alleged independent agreement provided for a subject, the wage rate for the employee's job classification, that was covered by the CBA. *Id*. The court held that, to the extent the promised wage rate varied from the rate provided by the CBA, the latter controlled. *Id*. The court distinguished cases permitting an

employee to pursue state law claims arising from independent agreements that related to positions not covered by the CBA. *See, e.g., Caterpillar,* 482 US at 395-97.

The reasoning of *Beals* is applicable here as well. Plaintiff's statutory wage claims were based on a contract theory. *See Antol v. Esposto,* 100 F3d 1111, 1117 (3d Cir 1996) (state law wage statute claim was contract-based and thus subject to federal preemption based on CBA). The CBA included a wage rate for plaintiff's position that was inconsistent with the rate established by the collateral employment contract on which plaintiff relies. Therefore, plaintiff's claims are preempted.[2]

The dissent adopts a different view; it relies on several cases, which, it asserts, "holds that state law claims are not preempted for promises made prior to employment * * * or when private agreements are more generous than the provisions contained in a CBA * * *." 168 Or App at 669. The dissent believes that those cases reflect a more realistic understanding of business practices than do the decisions in *Beals* and *Antol* and that we should, therefore, reject the preemption analysis in the latter cases. However, the conflict that the dissent finds in the cases dissolves when each is understood in its proper context.

*Anderson v. Ford Motor Company,* 803 F2d 953 (8th Cir 1986), *cert den sub nom Ford Motor Co. v. Anderson,* 483 US 1011 (1987), provides an instructive example. In *Anderson,* the Eighth Circuit Court of Appeals held that employee claims of fraudulent and negligent representation were not preempted by section 301 because those torts "arise in state common law and are measured by standards of conduct and responsibility completely separate from and independent of a collective bargaining agreement." 803 F2d at 959. However, a distinction can reasonably be drawn between contract claims that conflict with a CBA and tort claims that do not. In *Beals,*

---

[2] Plaintiff's claim for a penalty under ORS 652.150 is preempted, because any penalty would necessarily be calculated based on a contractual pay rate that is inconsistent with the CBA.

the court held that the plaintiff's contract claim was pre-empted by a conflicting CBA but came to the opposite conclusion with respect to his separate claim for negligent misrepresentation:

"To prove negligent misrepresentation under Hawaii law, [plaintiff] must show that (1) [defendant] failed to exercise reasonable care in communicating false information to [plaintiff]; and (2) [plaintiff] justifiably relied on that information. * * * [Defendant] argues that the second prong requires an interpretation of the terms of the CBA because whether [plaintiff's] reliance was justifiable depends on whether [plaintiff] should have known that the CBA permitted [defendant] to terminate him at any time for lack of work. We disagree. [Plaintiff] does not contest that he could have been discharged for lack of work under the CBA. * * * Thus, the question whether [plaintiff] knew about the provisions of the CBA would not require a court to construe any terms in the CBA because no relevant provisions are disputed. Since none of the terms of the CBA relevant to [plaintiff's] negligent misrepresentation claim is subject to conflicting meanings, resolution of that claim will not contravene the policy behind [section] 301 preemption 'to ensure uniform interpretation of collective-bargaining agreements * * *.' " *Beals,* 114 F3d at 895.

The court recognized that the plaintiff's misrepresentation claim created no risk that the CBA would be erroneously interpreted. The fundamental focus of that claim was on the legal effect of the employer's promise; the meaning of the CBA was not in dispute. Unlike the tort claims brought against the employers in *Anderson* and *Beals,* here, plaintiff's claim is exclusively based on an oral agreement that is in direct conflict with the terms of the governing CBA. Because plaintiff has not asserted a claim for misrepresentation or any other tort arising from the alleged promise to pay a higher hourly rate than was provided by the CBA, *Anderson* and other cases involving tort claims are inapplicable. *See, e.g., Walton v. Carolina Telephone and Telegraph Company,* 93 NC App 368, 375, 378 SE2d 427, *rev den* 325 NC 230, 381 SE2d 792 (1989) (employee's fraud claim was not preempted because representations sued upon were independent of the CBA).

The dissent cites *Loewen Group International, Inc. v. Haberichter*, 65 F3d 1417 (7th Cir 1995), for the principle that employees are entitled to enforce collateral agreements that contain more generous provisions than a CBA covering the employment relationship. That, however, is not the point of *Loewen*. In *Loewen*, the CBA did not even deal with the subject matter of a written agreement that included the employee's covenant not to compete with the employer. The court stated that "[o]nly a quick glance [at the elements of the employer's claims for wrongful competition] is needed to find that no resort to the collective bargaining agreement is required here in order to resolve the claims asserted." *Id*. at 1422. Unlike the circumstances in *Loewen*, there is a nexus between the agreement on which plaintiff relies and the CBA in this case: both address the rate of pay for a position covered by the CBA. Thus, a preemptive conflict exists here where none was found in *Loewen*.

Finally, *Pauley v. Ford Electronics and Refrigeration Corporation*, 941 F Supp 794 (SD Ind 1996), turned on a distinct principle of federal preemption. The precise holding of that case was that the Indiana state court was not deprived of subject matter jurisdiction because of preemption.[3] *Id*. at 804. In making that determination, the court considered only the allegations of the plaintiff's complaint; the court expressly declined to address the specific issue before us, namely, whether the employee's contract claim was overridden on the merits by the terms of a conflicting CBA. *Id*.

The dissent seems to fear that our conclusion may insulate, or even encourage, the practice of luring employees to work with promises of pay and benefits that exceed applicable CBA scales. However, our decision does not foreclose a remedy for employees who, unlike plaintiff, allege and prove that they are the victims of tortious or otherwise unlawful employment practices. Because plaintiff's contract-based claims directly controvert the provisions of the CBA governing the rate of pay for his job, they are preempted on their merits. Therefore, the trial court did not err in granting summary judgment in favor of defendant.

---

[3] The jurisdictional component of preemption is sometimes referred to as *complete* preemption. *Id*. at 801.

Affirmed.

**WOLLHEIM, J.,** dissenting.

Because I disagree with the majority's analysis of federal preemption of state law claims based on collateral employment agreements that differ from the provisions of a collective bargaining agreement (CBA), I respectfully dissent.

I agree with most of the analysis contained in the majority's opinion. First, I agree with the majority that ORS 652.140(5) requires a case-specific determination of whether a CBA provides for the payment of wages under circumstances specific to plaintiff's termination of employment. Second, I agree with the majority's analysis that section 4.15 of the CBA does not include a payment provision pertaining to wages due on voluntary termination of employment and, therefore, the requirements of ORS 652.140(2) apply in this instance. Finally, I agree that we are not preempted by federal labor law from reaching that conclusion. I disagree, however with the majority's collateral employment agreement analysis.

The federal circuits are split on the issue of federal preemption of collateral employment agreements. One view holds that state law claims are not preempted for promises made before employment, *see, e.g., Anderson v. Ford Motor Company*, 803 F2d 953, 957-58 (8th Cir 1986), *cert den* 483 US 1011 (1987), or when private agreements are more generous than the provisions contained in a CBA, *see, e.g., Loewen Group Intern. Inc. v. Haberichter*, 65 F3d 1417, 1426 (7th Cir 1995). The other view holds that section 301 preempts state law claims based on *any* independent employment agreement that concerns a job position covered by a CBA. *See, e.g., Beals v. Kiewit Pacific Co., Inc.*, 114 F3d 892 (9th Cir 1997), *cert den* 522 US 1108 (1998); *Antol v. Esposto*, 100 F3d 1111 (3rd Cir 1996). For the reasons stated below, I agree with the reasoning of the cases that hold that state actions are not always preempted. The majority follows the cases favoring preemption.

In *J.I. Case Co. v. Labor Board*, 321 US 332, 339, 64 S Ct 576, 88 L Ed 762 (1944), the United States Supreme Court said:

> "Individual contracts cannot subtract from collective ones, and whether under some circumstances they may add to them in matters covered by the collective bargain, we leave to be determined by appropriate forums under the laws of contract applicable, and to the Labor Board if they constitute unfair labor practice."

In *Caterpillar Inc. v. Williams*, 482 US 386, 107 S Ct 2425, 96 L Ed 2d 318 (1987), the Court reinforced the proposition that individual employment contracts are not automatically subsumed into, or eliminated by, a CBA. There, the Court held that employees covered by a CBA may assert legal rights independent of that agreement so long as those rights do not arise from the CBA. *Id.* at 396.

Courts in other jurisdictions have applied those principles. In *Anderson*, an employer promised laid off workers, as an inducement for them to begin work immediately, that they would not be "bumped" in favor of more recently laid off workers. 803 F2d at 954-55. When the workers were later "bumped," they brought an action under state law and the employer argued federal preemption. *Id.* at 955. The Eighth Circuit concluded that, when promises of permanent employment were made before individuals became employees and when the claims do not originate in rights and duties established by a CBA, an employer does not have the right either to misrepresent the terms and conditions of employment or to avoid contractual obligations based on those pre-employment promises. *Id.* at 957-59. In *Pauley v. Ford Electronics and Refrigeration Corp.*, 941 F Supp 794, 796-97 (SD Ind 1996), the plaintiff was induced to change jobs on the promise of a specified rate of pay but was actually paid substantially less, as provided by the terms of a bargaining agreement. There, the court held that the preemployment promise was an individual promise made before employment and that the CBA did not preempt enforcement of that promise. The court specifically rejected the employer's argument that, merely because the CBA addressed wages, the right to a promised rate of pay asserted by the plaintiff was a right arising from the CBA. *Id.* at 802. In *Loewen*, the Seventh Circuit

concluded that an individual agreement, negotiated between an employer and a future employee and that gives more rights to the employee than does the CBA, is "consistent with" the CBA. 65 F3d at 1424. The court added, "[A]s long as the employer is not attempting to circumvent a union or undermine a collective bargaining agreement * * * it is permissible to negotiate more favorable contracts with individual members." *Id.* at 1426. The primary rationale for not preempting a state cause of action in those instances was perhaps summed up best by the Court of Appeals of North Carolina in *Walton v. Carolina Tel. & Tel. Co.*, 93 NC App 368, 378 SE2d 427, 432, *rev den* 325 NC 230, 381 SE2d 792 (1989):

> "Any other result might suggest that an employer could flout with impunity the restrictive provisions of a collective-bargaining agreement by making individual, independent promises to an employee, and then raise the collective-bargaining agreement as a defense when the employee seeks to have those promises fulfilled."

That is the situation here.

An additional reason leads me to reach the conclusion that promises made independently of a CBA are not subject to preemption in all instances. Quite simply, that position reflects the reality of business practices. Employers at times provide pay scales and other benefits greater than those contained in collective bargaining agreements in order to attract and keep the best employees. To verify that assertion, one need look no further than the facts contained in *Beals*. There, a construction worker was induced to move from California to Hawaii by promises that he would be paid wages at a specific rate, paid a weekly subsistence allowance and moving expenses, and employed for the duration of the construction project. *Beals*, 114 F3d at 893. All of those terms were either better than similar terms contained in the existing CBA or not addressed by it. *Id.* The employer adhered to the terms of the promise, not the CBA terms, for five months before terminating the plaintiff. *Id.* The majority's position ignores current business practices and makes these pre-employment promises unenforceable. I would conclude that, if a collateral agreement between the worker and the employer concerning the worker's rate of pay is reached

before employment, federal labor law does not preempt enforcement of that agreement.

For the reasons stated above, I conclude that two genuine issues of material fact remain as to whether defendant paid plaintiff all wages due on termination of employment as required by ORS 652.140(2). The first issue is whether plaintiff was paid at the proper rate of pay. The second issue is whether plaintiff was paid within five working days after he quit. Therefore, summary judgment was improper in this instance and I would reverse and remand for further proceedings.

Accordingly, I respectfully dissent.