Argued and submitted March 13, decision of Court of Appeals and judgment of circuit court reversed, and case remanded to circuit court for further proceedings September 6, 2002

Richard SMOLDT,
*Petitioner on Review,*

*v.*

HENKELS & McCOY, INC.,
*Respondent on Review.*

(C96110508; CA A97994; SC S48007)

53 P3d 443

Jacqueline L. Koch, of Koch & Deering, Portland, argued the cause for petitioner on review. With her on the brief was James Dana Pinney, Tualatin.

Dian S. Rubanoff, of Williams, Zografos & Peck, LLP, Portland, argued the cause for respondent on review. With her on the brief was Paula A. Barran, Portland.

RIGGS, J.

**RIGGS, J.**

The issue in this case is whether the existence of a collective bargaining agreement (CBA), standing alone, prevents an employee subject to that agreement from pursuing a claim for wages in excess of those specified in the CBA. Employee, Richard Smoldt, had an individual employment contract with employer, Henkels & McCoy, Inc. A CBA also covered employee's position. The wage rate provided by the individual contract was higher than the rate provided by the CBA. When employer paid wages according to the lower rate provided by the CBA, employee sought recovery from employer through a statutory wage claim. Both parties moved for summary judgment, and the trial court granted employer's motion. On appeal, the Court of Appeals affirmed. *Smoldt v. Henkels and McCoy, Inc.*, 168 Or App 657, 7 P3d 638 (2000). Because we conclude that the CBA does not bar employee's wage claim under either state or federal law, we reverse and remand to the trial court for further proceedings.

We review the facts in the light most favorable to employee, against whom the trial court granted summary judgment, to determine whether employer is entitled to summary judgment.

Employer hired employee as an equipment operator at a rate of $14.48 per hour. A CBA between employer and Local 659 of the International Brotherhood of Electrical Workers, however, applied to employee's position and set wages for that position at $11.48 per hour. Employee worked for employer from May 24, 1996, to June 1, 1996. After receiving his first paycheck, employee discovered that employer had paid him at the $11.48 hourly rate, instead of the $14.48 hourly rate. Employer refused to adjust employee's paycheck to reflect the agreed-upon $14.48 rate. Consequently, employee terminated his employment.

Employee filed an action to collect unpaid wages under ORS 652.140(2),[1] penalties under ORS 652.150,[2] and attorney fees under ORS 652.200.[3] As noted, both parties moved for summary judgment. In support of its motion, employer argued that, under both ORS 652.140(5)[4] and section 301 of the National Labor Management Relations Act (NLRA), 29 USC § 185(a) (2001) (section 301),[5] the CBA preempted employee's wage claim. The trial court granted employer's motion for summary judgment.

In affirming that ruling, the Court of Appeals determined that preemption occurred through section 301, but not through ORS 652.140(5). *Smoldt*, 168 Or App at 663 and 666. We allowed review.

The relevant inquiry here is whether a CBA prevents an individual subject to that agreement from pursuing a claim for wages that exceed the terms of the CBA. The CBA constitutes such a barrier if state or federal law so provides, but not otherwise.

---

[1] ORS 652.140(2) provides:

"When an employee who does not have a contract for a definite period quits employment, all wages earned and unpaid at the time of quitting become due and payable immediately if the employee has given to the employer not less than 48 hours' notice, excluding Saturdays, Sundays and holidays, of intention to quit employment. If notice is not given to the employer, the wages shall be due and payable within five days, excluding Saturdays, Sundays, and holidays, after the employee has quit, or at the next regularly scheduled payday after the employee has quit, whichever event first occurs."

[2] Subject to some limitations, ORS 652.150 requires an employer who does not satisfy the requirements of ORS 652.140(2) to pay an employee, who has quit employment, at the employee's regular wage rate for eight hours per day until all wages are paid or legal action has been commenced.

[3] If an employee prevails in an action for unpaid wages, ORS 652.200 requires an employer to reimburse the employee for reasonable attorney fees incurred at trial and on appeal.

[4] ORS 652.140(5) provides an exception to the requirements of ORS 652.140(2) if a "collective bargaining agreement otherwise provides for the payment of wages upon termination of employment."

[5] Section 301 provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ We first turn to Oregon law. ORS 652.140(5) is part of a larger statutory scheme that includes ORS 652.140(2), which requires employers to pay all wages immediately after an employee quits, so long as the employee provides adequate notice. If an employer fails to pay wages as required by ORS 652.140(2), then penalties apply under ORS 652.150, and the employee subsequently may seek attorney fees under ORS 652.200.

■ Whether the CBA bars employee's wage claim, under ORS 652.140(5), depends upon the meaning of the words "otherwise provides for the payment of wages upon termination of employment." When interpreting a statutory provision, this court follows the now familiar interpretive methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). Under those guidelines, words of common usage are given their "plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. *Webster's Third New Int'l Dictionary*, 1598 (unabridged ed 1993), defines "otherwise" as "in a different way or manner: differently." When considered in the context of the other provisions of ORS 652.140, the meaning of "otherwise" is unambiguous.[6] The plain meaning of ORS 652.140(5) excuses an employer from the requirements found in other parts of ORS 652.140, including subsection (2), only if a CBA affirmatively provides different requirements regarding wage payments on termination of employment. The excerpts from the CBA contained in the record do not include requirements for the payment of wages upon voluntary termination. Consequently, the trial court erred by granting summary judgment.

■ Without a sufficient basis for summary judgment under Oregon law, the validity of the trial court's decision entirely depends on section 301. The United States Supreme Court has interpreted section 301 to preempt a party to a CBA from pursuing claims under supplemental contracts when those claims arise directly from rights granted in a

---

[6] The Court of Appeals determined that the statute was ambiguous in that regard and proceeded in its analysis to consider legislative history. Ultimately, the court determined that legislative history supported the conclusion that ORS 652.140(5) did not preclude employee's claim.

CBA or when a party's claims are "substantially dependent" on interpretation of a CBA. *Caterpillar, Inc. v. Williams*, 482 US 386, 394, 107 S Ct 2425, 96 L Ed 2d 318 (1987).

■ Employee's statutory wage claim does not arise directly from rights granted by the CBA. The portion of the CBA contained in the record includes provisions related to layoffs and involuntary termination, but does not include provisions related to voluntary termination by an employee. Moreover, employee seeks enforcement of rights found in an individual employment contract, rather than rights granted by the CBA. As the Supreme Court has explained, "a plaintiff covered by a collective-bargaining agreement is permitted to assert legal rights *independent* of that agreement, including state-law contract rights, so long as the contract relied upon is *not* a collective-bargaining agreement." *Caterpillar*, 482 US at 396 (citing *Allis-Chalmers Corp. v. Lueck*, 471 US 202, 211, 105 S Ct 1904, 85 L Ed 2d 206 (1985) (emphasis in original)).

Additionally, employee's claim is not "substantially dependent" on interpretation of the CBA. At most, employee's claim requires reference to the CBA for the purpose of understanding the disparity between the wage rate provided by the CBA and the wage rate provided by employee's individual contract. The CBA is relevant evidence in this case, but mere reference to the CBA does not amount to "interpretation." *Livadas v. Bradshaw*, 512 US 107, 124-25, 114 S Ct 2068, 129 L Ed 2d 93 (1994).

Employer further argues that federal labor law bars the enforcement of individual contracts that are inconsistent with a CBA. Employer's argument hinges on the meaning of *J.I. Case Co. v. NLRB*, 321 US 332, 64 S Ct 576, 88 L Ed 762 (1944), in which the Supreme Court held that individual contracts are invalid if they diminish employee rights under a CBA or detract from the NLRA. Employer argues that *J.I. Case* stands for a broader prohibition against enforcement of any individual contract providing an employee with more favorable terms than those provided by a CBA. Employer reads too much into *J.I. Case*. The Supreme Court did not adopt a blanket rule prohibiting enforcement of all individual contracts that provide more favorable terms.

Rather, the Court limited its analysis to whether the possibility of an employee receiving more favorable terms than those provided by a CBA warranted a general rule allowing the enforcement of individual contracts, regardless of inconsistency. *Id.* at 338. The Court specifically reserved authority for "appropriate forums" to determine the enforceability of more favorable individual contracts on a case-by-case basis.

In sum, contrary to employer's arguments, neither section 301 nor *J.I. Case* precludes employee's wage claim. Employee's individual contract does not arise directly from the CBA, is not substantially dependent upon interpretation of the CBA, and does not detract from the CBA or the NLRA. The trial court, therefore, erred by granting employer's motion for summary judgement.[7]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

---

[7] Employee also filed a motion for summary judgment, which the trial court denied. Although employee challenged that denial before the Court of Appeals, he failed to bring such a challenge before this court.