Argued and submitted September 27, 2004, at University of Oregon School of Law, Eugene, supplemental judgment awarding attorney fees to defendant reversed; otherwise affirmed February 2, 2005

## Robert CRAMBLIT,
*Appellant,*

*v.*

## DIAMOND B CONSTRUCTORS,
a foreign corporation,
*Respondent.*

## 1201-20364; A119934

105 P3d 906

David C. Force argued the cause and filed the briefs for appellant.

Jeffrey E. Potter argued the cause for respondent. With him on the brief was Gardner, Honsowetz, Potter, Budge & Ford.

359-a

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Bearden, Judge pro tempore.

SCHUMAN, P. J.

.

**SCHUMAN, P. J.**

This litigation began four years ago as a dispute between plaintiff, a sheet metal worker, and defendant, his employer, over allegedly unpaid wages amounting to approximately $200.00. During the litigation, plaintiff's demand for relief grew to over $100,000, defendant rejected an arbitrated resolution, and each side's attorney fees reached well into the realm of five figures. Ultimately, the trial court granted defendant's motion to dismiss and taxed plaintiff for $20,031.03 in attorney fees and costs. Plaintiff appeals. We vacate the trial court's supplemental judgment awarding fees and otherwise affirm.

Plaintiff belonged to the Sheet Metal Workers' International Association, Local Union No. 16. Defendant contacted plaintiff's union hall in Gresham and hired plaintiff for a project some 40 miles away in Salem. Halfway through his third day on the job, plaintiff was fired. Defendant immediately issued him a check that included pay for most of the hours worked on the site. Plaintiff, believing that his employment contract also entitled him for payment for travel time and mileage between the union hall and the job site, complained to his union, which promised to undertake grievance proceedings. By the seventy-fifth day after his termination, defendant paid plaintiff for travel time and mileage, explaining to him in a letter that, contrary to defendant's original understanding, it now acknowledged that the collective bargaining agreement (CBA) between defendant and plaintiff's union governing work at the Salem job site required payment as plaintiff demanded.

Plaintiff, however, believed that he was entitled not only to compensation for travel time and mileage, but also for penalties due to defendant's delay in paying that compensation. A document titled "Standard Form of Union Agreement, Form A-5-98 Revised," governed terms and conditions of employment between members of plaintiff's union and their employers.[1] It contained a provision requiring payment for

---

[1] The record refers to two documents governing the employment relationship between plaintiff and defendant. Standard Form of Union Agreement, Form A-5-98 Revised, appears to be a general agreement between union members and

"all hours up to the time [the employee] receives pay," including, in the event that employer did not fully pay amounts due at the time of termination, payment at overtime rates for all hours between that termination and actual payment.

Initially, the union notified plaintiff that, under the CBA, he could not seek penalties for the unpaid travel time and mileage. Subsequently, however, a union representative told plaintiff that he *was* entitled to penalties for the late payment of travel time and mileage. The representative calculated the penalty under the terms of the agreement to be $104,131.44, that is, the amount plaintiff would have earned working eight hours per day at overtime rates from the time he was terminated until the time he was fully paid. In the same letter, however, the representative proposed to settle for $8,724.00. According to the representative, that amount constituted the total penalty to which plaintiff was entitled, not under the CBA, but under ORS 652.140(1) and ORS 652.150. Those statutes, according to the union, would require defendant to pay a penalty in the amount of all wages plaintiff would have earned at his regular hourly rate for 30 eight-hour days. Defendant refused to pay either sum, and plaintiff brought this action. The complaint clearly specifies that plaintiff seeks penalty wages under ORS 652.140 and ORS 652.150, not under the CBA.

The matter went to court-ordered arbitration. The arbitrator resolved the dispute in plaintiff's favor and awarded him $4,362.48 in penalty wages, $697.00 in costs, and $4,900.00 in attorney fees. Pursuant to ORS 36.425(2)(a), defendant rejected the arbitration and requested a trial *de novo*.[2] At that trial, defendant moved for dismissal under ORCP 54 B after the close of plaintiff's case. The trial court granted the motion and entered judgment accordingly. In a supplemental judgment, the court awarded defendant $20,031.03 in attorney fees and costs. Plaintiff

employers. That document was apparently supplemented by an operating agreement that applied specifically to the Salem job site. The operating agreement was not signed until after defendant fired plaintiff, but the parties agree that the language at issue in this case appears in the general agreement.

[2] ORS 36.425(2)(a) provides that "a party against whom relief is granted [in court-ordered arbitration] * * * may file with the clerk a written notice of appeal and request for a trial de novo of the action in the court on all issues of law and fact."

appeals, arguing that the trial court erred in allowing defendant's motion to dismiss; in failing to make findings and conclusions; in denying plaintiff's motion to vacate "all proceedings" after the arbitration because defendant did not timely pay required court fees; and in awarding attorney fees.[3]

■    Before addressing plaintiff's assignments of error, we address defendant's argument that we must dismiss the appeal because we lack jurisdiction. That argument stems from the unexplained fact that two judgments were filed dismissing this case. One was dated October 16, 2002, and entered on October 23; the other was dated October 28, 2002, and entered on November 1. Except for the dates, the judgments are identical. Plaintiff's notice of appeal, which was timely as to both, advised defendant that the appeal was from the later, October 28, judgment, a copy of which was attached. After the supplemental judgment awarding attorney fees was entered, plaintiff timely filed an amended notice of appeal.

Defendant argues that the earlier, October 16, judgment is the only operative one; the later judgment, defendant maintains, is null because it did not expressly supersede the earlier one. Thus, defendant argues, by appealing from a "nullity," plaintiff did not provide "notice * * * that an appeal is taken from the judgment" as required under ORS 19.250(1)(c).[4] Defendant further argues that plaintiff's

---

[3] Throughout his brief, plaintiff attacks the trial court judge for ignoring "clear precedent" and assuming "facts which * * * never existed" in order to decide the case based on his "personal feeling" and "personal beliefs," ultimately reaching a decision that "was a political conclusion rather than a legal one." Plaintiff also attacks the trial court for creating the appearance of impropriety by awarding fees to a former law partner, and urges us, if we remand the case, to specify that a different trial court judge should be assigned the case "in order to protect [the original judge] from potential sanction." None of these unsubstantiated *ad hominem* attacks is actually argued as part of any assignment of error and we disregard them except to remark that they are inappropriate.

[4] ORS 19.250 governs the procedure for plaintiff's appeal in this case. It provides, in part:

"The notice of appeal shall contain the following:

"(a)  The title of the cause * * *.

"(b)  The names of the parties and their attorneys.

"(c)  A notice to all parties or their attorneys as have appeared in the action or proceedings that an appeal is taken from the judgment or some specified part thereof and designating who are the adverse parties to the appeal."

amended notice of appeal from the trial court's supplemental judgment awarding attorney fees is not cognizable because the underlying judgment on which the attorney fee entitlement depends is not final. *King v. Clements*, 143 Or App 462, 470, 923 P2d 688 (1996).

We disagree. Even if the earlier judgment was the proper document from which plaintiff should have appealed—and defendant offers no reason why we should consider the later judgment, rather than the earlier one, "a nullity"—plaintiff's failure to refer to and attach the correct judgment is not a fatal defect. Plaintiff's notice of appeal referred to a judgment that is identical in content to the first judgment in every way except for its date, as was the copy he attached to the notice. Thus, plaintiff's error is essentially the same as if he had mistakenly included an erroneous date. That is not a jurisdictional defect. *See, e.g., Fuller v. Blanc*, 160 Or 50, 55, 77 P2d 440 (1938) (notice of appeal is not insufficient because it specifies a wrong date as date of judgment); *Lee v. Gram*, 105 Or 49, 53-54, 196 P 373 (1922) (same); *Werline v. Webber*, 54 Or App 415, 635 P2d 15 (1981), *rev den*, 292 Or 450 (1982) (notice of appeal stating appeal was taken from "judgment" was adequate to confer jurisdiction on Court of Appeals despite fact that notice gave wrong date and attached copy of order denying motion for new trial rather than judgment).

Moreover, even though plaintiff attached a copy of the later judgment rather than the earlier one, defendant (as it candidly admits) "does not contend it was misled or prejudiced." The notice provided defendant with a sufficient description of the trial court action that is the subject of the appeal, thereby meeting the standard prescribed by this court. *See Jeffries v. Mills*, 165 Or App 103, 112, 995 P2d 1180 (2000) ("[I]f the parties with an interest in the judgment receive reasonable notice that their rights in a particular judgment might be affected, then a content defect [in the notice of appeal] will not be jurisdictionally fatal."); *Smith v. Koors*, 149 Or App 198, 203, 942 P2d 807 (1997) ("A notice of appeal is not jurisdictionally defective because it attaches the wrong document or incorrectly identifies the date of the proper judgment if there is in fact a final judgment," and "notice is sufficient if it contains enough information to reasonably apprise the adverse parties that an appeal is

being taken from an appealable judgment."). In sum, even though plaintiff referred to and attached the document with the later date, he accomplished notice of appeal from the final judgment of the trial court dismissing defendant's claims against plaintiff. " We deny defendant's motion to dismiss the appeal[5] and turn to plaintiff's assignments of error.

■ Plaintiff first asserts that the trial court erred in granting defendant's motion to dismiss his claim for penalty wages. He is entitled to such penalty wages under ORS 652.140(1) and ORS 652.150 if defendant did not pay him "all wages earned and unpaid" at the time of termination by the end of the first business day thereafter. ORS 652.140, however, contains an exception: The statute "does not apply to employment for which a collective bargaining agreement otherwise provides for the payment of wages upon termination of employment." ORS 652.140(5). Thus, "if all of the evidence in the record establishes that, as a matter of law, the CBA imposed requirements on defendant to pay wages to plaintiff at termination of employment, and those requirements differed from the ones in ORS 652.140(1), then plaintiff's claim fails and the court did not err in granting defendant's motion to dismiss. *See Smoldt v. Henkels & McCoy, Inc.*, 334 Or 507, 511, 53 P3d 443 (2002) (construing ORS 652.140(5)). As we explain, that is the case.

The parties agree that the "Standard Form of Union Agreement, Form A-5-98 Revised" covers the rates of pay and conditions of employment of union employees (including plaintiff) working for employer businesses (including defendant). Section 14 of Addendum I of that agreement governs the employer's obligation to pay wages at termination:

"TERMINATION PAY. When an employee is laid off or discharged, he shall be paid in full for all hours up to the time he receives pay. If required to wait after the regular working hours, he shall receive the overtime rate. Laid off

---

[5] We note that the better practice would have been to appeal from both judgments, as Judge Haselton has advised: "Appellate counsel are not somehow forced by [ORS 19.250] or the rules of appellate procedure to choose *between* judgments in designating judgments in notices of appeal. Common sense—and common practice—dictate 'covering all the bases' by referring to all arguably applicable judgments and attaching them to the notice of appeal." *Smith*, 149 Or App at 211 (Haselton, J., dissenting) (emphasis in original).

or discharged employees will be given one-half (½) hour's notice of layoff or discharge, or one-half (½) hour's pay at established rates in lieu of the one-half (½) hour's notice. If required to pick up his pay at another location, he shall receive travel time and mileage to and from designated destination, unless prior arrangements have been made. If the layoff or discharge occurs on a weekend (defined as 5:00 p.m. Friday to 6:00 a.m. Monday) the Employer will mail the employee's check by express mail no later than the close of business on the next regular business day."

Those requirements differ from the ones in ORS 652.140 with respect to both timeliness of payment and mode of delivery. The statute specifies that wages earned and unpaid at the time of termination must be paid before the end of the next business day, while the agreement specifies that the employee must be paid "when an employee is laid off or discharged." The statute ties the penalty to regular wages, while the agreement ties it to overtime rates. The statute makes no provision for payment by mail, while the agreement allows specifically for payment by "express mail" when termination occurs on a weekend. The agreement's requirements, then, affirmatively differ from the statute's. Thus, under ORS 652.140(5), the requirements of ORS 652.140(1) do not apply and, consequently, defendant does not incur the penalty specified by ORS 652.150.

To avoid that conclusion, plaintiff argues that the exception in ORS 652.140(5) does not apply because the CBA did not specifically require payment *for travel time and mileage upon termination of employment*. Thus, plaintiff maintains, the CBA does not "provide[ ] for the payment of [*travel time and mileage*] wages upon termination of employment," ORS 652.140(5) (bracketed italicized words added), so there is no sense in which the CBA can supersede or conflict with the statute. Each covers different territory.

That argument does not help plaintiff. If he is correct and the CBA did not require defendant to pay him for travel time and mileage, then defendant paid him in full at termination and incurred no penalty; plaintiff concedes that defendant paid him for all of the hours he put in at the job site.[6] If

---

[6] Plaintiff contended in his trial testimony that his paycheck for hours worked at the job site was $10.92 short; the alleged shortfall was not a part of plaintiff's claim at trial and is not an issue in the case on appeal.

plaintiff is wrong, and the CBA did require defendant to pay him for travel time and mileage, then, as we demonstrated above, ORS 652.140(5) applies. And if the CBA is ambiguous, that is, if a court must construe the CBA in order to determine whether it does or does not entitle plaintiff to travel time and mileage, that judicial task falls exclusively within federal jurisdiction, and state court jurisdiction is preempted by section 301 of the Labor Management Relations Act (LMRA), 29 USC § 185(a). *Caterpillar, Inc. v. Williams*, 482 US 386, 394, 107 S Ct 2425, 96 L Ed 2d 318 (1987) (construing LMRA to preempt state law claims that are substantially dependent on an interpretation of a CBA); *see also Livadas v. Bradshaw*, 512 US 107, 121-22, 114 S Ct 2068, 129 L Ed 2d 93 (1994) (explaining that purpose of preemption doctrine under section 310 of LMRA is to promote consistency in interpretation). Therefore, plaintiff's argument does not advance his case.

■■ Plaintiff also contends, however, that, even if the court reached the correct outcome regarding defendant's motion to dismiss, we must remand the case due to one or more fatal procedural defects. Thus, in his second assignment of error, plaintiff asserts that the trial court failed to enter findings and conclusions as required by ORCP 54 B(2) when it dismissed plaintiff's claim with prejudice. Under that rule, "[i]f the court renders judgment of dismissal with prejudice against the plaintiff, the court shall make findings as provided in [ORCP] 62." ORCP 62, in turn, provides, in part:

> "Whenever any party appearing in a civil action tried by the court so demands prior to the commencement of the trial, the court shall make special findings of fact, and shall state separately its conclusions of law thereon. In the absence of such a demand for special findings, the court may make either general or special findings. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact or conclusions of law appear therein."

Plaintiff points to nothing in the record, and we have found nothing, indicating that he made a demand for "special findings" under ORCP 62; therefore, the court could elect to make either general or special findings. ORCP 62 A. "Findings of fact can assume any form the trial court desires as long as the

court's intent to accord to its statements the character of findings of fact can be determined." *Wells v. Davis*, 258 Or 93, 96-97, 480 P2d 699 (1971).

Here, the trial court, on the record, provided a detailed explanation of its conclusion based on the evidence before it and explicitly characterized those statements as findings. The trial court began by stating: "The conclusions that I reach about this are these[.]" The court then recited a summary of the facts, in chronological order, that demonstrated that plaintiff repeatedly sought the aid of union representatives in seeking reimbursement that was due to him under the terms of the CBA. The court's recitation and evaluation of the facts occupies more than four trial transcript pages; the court prefaced sections of its discussions with the phrase "I find." For example, as the court's discussion closed, it stated:

> "So, I find that by using the union processes, as he was probably required to do, [plaintiff] put his hands in the union representation for the outcome, and while he might not have liked the outcome, that's the one the union decided was appropriate. They were authorized under the agreement, I believe, to do that, and the employer settled with them and sent him the checks."

The following colloquy then ensued:

> "[THE COURT:] So I find that the plaintiff has not proven his claim and that I'm going to enter a judgment on behalf of the defense. Now, is there [*sic*] any other further findings that [plaintiff would] like to have me try to address?

> "[PLAINTIFF'S COUNSEL:] No. * * * [F]rankly, I'm not very interested in * * * assisting you in making perfect *findings* that I'm going to file a notice of appeal from, because I am."

(Emphasis added.) Based on that record, we conclude that, even if there had been error, which there was not, plaintiff invited it.

■ In plaintiff's third assignment of error, he asserts that the trial court should have granted his motion to "vacate

the October 8, 2002, hearing" at which his claim was dismissed. The motion was based on the contention that the trial court lacked jurisdiction to hear the case because defendant had not complied with the statutory requirements for requesting a trial *de novo* after entry of an arbitration award in plaintiff's favor. The assignment of error lacks merit.

ORS 36.425 sets out the procedure for requesting a trial *de novo* at the conclusion of arbitration. A party against whom relief is granted by the arbitrator's decision may "request a trial de novo of the action," and if the party does so, "a trial fee or jury trial fee, as applicable, shall be collected as provided in ORS 21.270." ORS 36.425(2)(a), (b). ORS 21.270(2), in turn, states that the clerk of the circuit court "shall collect" a fee for the first day of trial "in advance [of the time] the action, suit or proceeding is set for trial." Defendant failed to make the payment before trial, and plaintiff argues that this procedural lapse renders the trial a "nullity" because the imperfect appeal precluded the trial court's exercise of jurisdiction. Defendant responds that its failure to pay the fee did not deprive the trial court of jurisdiction to hear the case. We agree with defendant.

Whether payment of a trial fee under ORS 36.425(2)(b) is a necessary prerequisite to a valid post-arbitration trial is a matter of statutory interpretation and therefore a question of law. ORS 36.425(2) provides, in part:

"(a)   Within 20 days after the filing of a decision and award with the clerk of the court * * * a party against whom relief is granted by the decision and award * * * may file with the clerk a written notice of appeal and request for a trial de novo of the action in the court on all issues of law and fact. A copy of the notice of appeal and request for a trial de novo must be served on all other parties to the proceeding. After the filing of the written notice a trial de novo of the action shall be held. * * *

"(b)   If a party files a written notice under paragraph (a) of this subsection, a trial fee or jury trial fee, as applicable, shall be collected as provided in ORS 21.270.

"* * * * *

"(3)   If a written notice is not filed under subsection (2)(a) of this section within the 20 days prescribed, the court

shall cause to be prepared and entered a judgment based on the arbitration decision and award. A judgment entered under this subsection may not be appealed."

The procedural requirements for requesting a new trial after the filing of an arbitrator's decision and award are set out in ORS 36.425(2)(a) and consist of filing a notice of appeal and request for a trial, and serving copies on all other parties; "after" those events, "a trial * * * shall be held." Under ORS 36.425(2)(b), a separate provision, the applicable fee "shall be collected as provided in ORS 21.270." That statute directs the clerk of the court to collect specified sums from the plaintiff, depending on whether a jury trial is requested. Neither statute describes the requirement of payment of trial fees as jurisdictional. In fact, ORS 21.270(2) burdens the clerk of the court with collecting the applicable fee, rather than directing the plaintiff (or appellant) to make the payment. Neither statute describes consequences for an appellant when the clerk of the court does not timely collect a trial fee. There is no indication in either statute that a failure to collect the payment renders a proceeding "void" or deprives the trial court of jurisdiction to hear the matter.

ORS 36.425(3) adds that, if the notice of appeal is not filed "under subsection (2)(a)" within 20 days of the filing of the arbitrator's decision or award, the court must enter judgment on the arbitration decision and award. That provision closes the window of opportunity for appealing from an arbitrator's decision by providing for the entry of that decision and award only if "written notice is not filed under [ORS 36.425(2)(a)] within the 20 days prescribed[.]" ORS 36.425(3). Again, no reference to the trial fee is present. Nothing directs entry of judgment against an appellant if the requirement of subsection (2)(b)—collection of the fee—does not occur. Thus, if a party files a timely written notice of appeal under subsection (2)(a) and the trial fee has not been collected under subsection (2)(b), subsection (3) would not trigger a nonappealable entry of judgment. The statute is clear on its face: failure to collect the fee does not require entry of judgment against an appellant. *A fortiori*, it does not deprive the court of jurisdiction to hear the case. Plaintiff would have us "insert what has been omitted" by labeling the fee payment jurisdictional, and we are prohibited from doing so. ORS 174.010. The trial

court did not lack jurisdiction to hear this case upon defendant's request for a trial *de novo* under ORS 36.425.

■■ Finally, plaintiff asserts that the trial court erred in granting defendant's petition for costs and attorney fees because defendant did not state a basis for the fee award and the trial court did not conduct a hearing, both requirements of ORCP 68. "We review a trial court's determination of entitlement to attorney fees for error[ ] of law." *Stevens v. Foren*, 154 Or App 52, 60, 959 P2d 1008, *rev den*, 327 Or 554 (1998). Defendant concedes that the trial court erred in failing to hold a hearing, and it urges us to remand so that the hearing may occur. Plaintiff argues that we need not remand because defendant's failure adequately to plead a basis for attorney fees is fatal to its claim in any event. We agree with plaintiff.

After the trial court orally granted defendant's motion to dismiss under ORCP 54, defendant requested fees based on its status as a prevailing party and under ORS 20.105. Defendant represented to the court that "[w]e pled them from the beginning * * *." The trial court did not resolve the issue at that time; instead, its judgment provided for defendant to submit a claim for attorney fees under ORCP 68. Defendant complied and subsequently, without conducting a hearing as required under ORCP 68 C, the trial court awarded defendant a money judgment that included all requested fees and costs.

ORCP 68 C(2)(a) states, in part:

> "A party seeking attorney fees shall allege the facts, statute, or rule which provides a basis for the award of such fees in a pleading filed by that party. * * * No attorney fees shall be awarded unless a right to recover such fee is alleged as provided in this subsection."

Defendant concedes that its pleading did not refer to any statute or rule providing a basis for attorney fees. It argues, however, that it met the requirements of ORCP 68 C(2)(a) because its answer demanded dismissal "[t]axing all fees and costs to Plaintiff," and it contained an allegation referring to the CBA. According to defendant, those elements of its answer provided a basis under ORCP 68 for its generic request for a fee award, both because the CBA contained an

attorney fee provision and, in light of the terms of the CBA, plaintiff's claim for statutory penalty wages was obviously meritless.

■ We disagree. The requirement that the party seeking fees state the "facts, statute, or rule" that provides a basis for a fee award is mandatory. *See Mulier v. Johnson,* 332 Or 344, 350, 29 P3d 1104 (2001) (interpreting ORCP 68 C(2)(a) and construing the term "shall" as a command). To fulfill that requirement, the party's assertion of facts must clearly and explicitly indicate a party's entitlement to fees. For example, a wife's motion both stating facts that showed that husband was in contempt, and also requesting attorney fees, fulfilled the requirement in light of a statute that specifically authorized a fee award to a prevailing party in a contempt proceeding. *Hogue v. Hogue,* 118 Or App 89, 92, 846 P2d 422 (1993). In another case, the defendant's factual allegation that he was a prevailing party under a contract provision and that the plaintiff acted in bad faith sufficed to allege a basis for a fee award under a contract and ORS 20.105. *Attaway, Inc. v. Saffer,* 95 Or App 481, 484, 770 P2d 596, *rev dismissed,* 308 Or 184 (1989).

Here, however, defendant's relevant allegation of fact stated:

> "The terms of plaintiff's employment were contained in a written collective bargaining agreement, which is a written document that speaks for itself and therefore, the allegations concerning plaintiff's terms and conditions of employment are denied."

The function of the allegation was to dispute plaintiff's claims concerning the terms of his employment, not to support an asserted basis for a fee award, such as a provision of the CBA regarding attorney fees or the conclusion that plaintiff's claim was meritless. Nothing in defendant's answer, in other words, indicated a relationship between some fact or set of facts and an entitlement to fees.

■ Defendant next argues that, even if its answer was defective, the trial court had discretion to disregard the error under ORCP 12 B, which states, "[t]he court shall, in every

stage of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party." Defendant cites *Mulier,* 332 Or at 350, which states that "the words 'error' and 'defect' in ORCP 12 B reflect the legislature's intent that a party must attempt to comply with the mandatory requirements of the rules of civil procedure if that party is to benefit from the provisions of ORCP 12 B." According to defendant, it did "attempt to comply" when it asked the court to "tax" its fees to plaintiff, and, even though it fell short, it should nonetheless benefit from ORCP 12 B.

We disagree. Defendant made no attempt to allege "the facts, statute, or rule [that] provides a basis" for a fee award. In *Mulier,* the Oregon Supreme Court held that a party's "complete failure" to allege a right to attorney fees in a motion under ORCP 68 C(2)(b) "does not demonstrate an attempt to comply with the requirements of that rule." *Mulier,* 332 Or at 350. We likewise conclude that defendant's "complete failure" to state any basis for an award of fees in its pleading is not an "attempt to comply" that might be cured by a court's exercise of discretion under ORCP 12 B. We therefore conclude that the trial court erred in awarding fees to defendant.

Supplemental judgment awarding attorney fees to defendant reversed; otherwise affirmed.